## MATTHEW W. PINKERTON
### v.
### WILLIAM GILBERT.

### WILLIAM GILBERT
### v.
### BRIGHTON COTTON MANUFACTURING COMPANY.

*Trespass—False Imprisonment—Agency—*Respondeat Superior*—Execution—Levy—Duty of Constable—Evidence—Instructions.*

1. The doctrine of *respondeat superior* applies only to acts performed by an agent within the scope of his employment.

2. In an action of trespass for false imprisonment, it is *held:* That the superintendent of the mills of defendant corporation was not authorized to institute or prosecute suits in its behalf; that the court properly instructed the jury to find the company not guilty, there being no evidence to charge it

Pinkerton v. Gilbert.

with any responsibility for the trespasses complained of; that the evidence of the complicity of another defendant, though conflicting, is clearly sufficient to sustain the verdict for the plaintiff; that the Constable's duty first to levy the execution on the property of the defendant therein, did not depend upon the permission of said defendant; and that this court will not review the instructions in detail where the objection thereto is merely general.

[Opinion filed June 9, 1887.]

Appeal from and in error to the Circuit Court of Cook County; the Hon. John G. Rogers, Judge, presiding.

Mr. Robert Hervey, for Matthew W. Pinkerton, appellant.

Messrs. Weigley, Bulkley & Gray, for William Gilbert, plaintiff in error and appellee.

Messrs. Forrest & May, for Brighton Cotton Manufacturing Company, defendant in error.

Bailey, J. This was an action of trespass, brought by William Gilbert against the Brighton Cotton Manufacturing Company, Frank P. Berry and Matthew W. Pinkerton, for false imprisonment. During the pendency of the suit Berry died and the suit was thereby abated as to him. At the trial the court, at the close of the plaintiff's evidence, instructed the jury to find the Brighton Cotton Manufacturing Company not guilty, which was accordingly done, and the court, after overruling the plaintiff's motion for a new trial, gave judgment in favor of said company for costs. Evidence in defense was offered on behalf of defendant Pinkerton, and the jury thereupon rendered a verdict, as to him finding him guilty, and assessing the plaintiff's damages at $500, for which sum and costs the court, after overruling a motion by said Pinkerton for a new trial, gave judgment in favor of the plaintiff. The plaintiff brings the record to this court by writ of error, assigning for error the instruction to the jury to find the Brighton Cotton Manufacturing Company not guilty, and the overruling of the plaintiff's

motion for a new trial as to that company, and defendant Pink-erton also comes here by writ of error and assigns various errors.

It appears that for several years prior to the commission of the trespasses complained of, the plaintiff was a dealer in paper stock and materials, having his place of business in the City of Chicago, and that said Brighton Cotton Manufacturing Company was a corporation organized under the laws of the State of Illinois, and owning and operating extensive cotton mills in Brighton near said city. Some time in October or the early part of November, 1884, one Rosie Kramer succeeded, by means of certain fraudulent artifices, in getting into her possession and taking away from said company's mills a quan-tity of cotton waste without paying for it. Said property was afterward purchased from said Rosie Kramer or her hus-band by the plaintiff, such purchase being made by him in good faith and without knowledge on his part of the circumstances under which it was procured by the vendor. Soon after the disappearance of said goods, Atkins, who at the time was the superintendent of said mills, instructed Mor-gan, the foreman, to place the matter in the hands of said Pinkerton, the proprietor of a detective agency, which was done. Pinkerton succeeded in tracing said property into the plaintiff's hands, and thereupon a suit in replevin was com-menced by him in the name of said company against Rosie Kramer and the plaintiff before a Justice of the Peace, to recover possession of said property, the affidavit in replevin being made by Morgan and the replevin bond being signed by Atkins as surety. Defendants, Pinkerton and Berry, the latter being a Constable, went to the plaintiff's store with the replevin writ and demanded possession of the property, and then for the first time the plaintiff learned the circumstances under which said property had been obtained from the com-pany. The plaintiff thereupon told Pinkerton all the facts attending his purchase and showed him the entries in his books of the receipt of the same and the price paid, and also his entries of the sale of the property and the name of the purchaser. Pinkerton being apparently satisfied with the

honesty of the plaintiff, told him that he wanted to find out the whereabouts of Rosie Kramer, and the plaintiff, at his instance, promised to do everything in his power to aid him in the search and to give him any information he might obtain in relation thereto. The evidence tends to show that Pinkerton at the same time told the plaintiff that, under the circumstances, he did not desire to prosecute the suit as against him, and promised, in consideration of the plaintiff's aiding him in the search for the Kramers, to have the suit continued from time to time until they should be found, and that when the trial should occur the plaintiff would be summoned as a witness; that in violation of this understanding, Pinkerton, while holding frequent consultations with the plaintiff in relation to the Kramers, caused judgment to be entered in said suit, in trover, without the knowledge of the plaintiff, for the sum of $164.50 and costs, and that before the plaintiff became aware of the entry of said judgment, the time prescribed by law for taking an appeal therefrom had elapsed; that Pinkerton then caused an execution to be issued on said judgment commanding the Constable, of the goods and chattels of the plaintiff, to make the amount of the judgment, and for want of such goods and chattels to take the body of the plaintiff and convey and deliver him to the keeper of the county jail, and commanding the keeper of said jail to receive and keep the plaintiff in safe custody until said judgment should be paid and satisfied or the plaintiff should be discharged in due course of law.

The evidence further tends to show that Pinkerton, after placing said writ in the hands of Berry, the Constable, went with him to the plaintiff's store where the plaintiff had goods and chattels which he was owing in his own right, of the value of many thousand dollars; that Pinkerton and the Constable demanded payment of the execution in money, threatening that if it was not so paid they would arrest him on the *writ* and take him to jail; that the plaintiff then pointed out to Pinkerton and the Constable, goods and chattels then present and of which he was the owner, of at least $5,000 in value, and told them to levy their execution thereon, but that

the officer, acting under Pinkerton's advice and direction, refused to make such levy and arrested the plaintiff and took him to the county jail and delivered him to the keeper of said jail. Many of the foregoing facts are disputed by Pinkerton's evidence, especially those relating to the circumstances of the plaintiff's arrest, his testimony being that the plaintiff refused to turn out property on the execution and forbid any levy thereon by the Constable, and that he, Pinkerton, gave no directions to the Constable and in no way interfered with his action in the premises. It appears that the plaintiff, the same day he was arrested, was discharged on *habeas corpus*.

The only question raised by the errors assigned on behalf of the plaintiff is, whether Atkins had authority from the Brighton Cotton Manufacturing Company to employ Pinkerton to institute and prosecute said replevin suit in its name and to issue execution and cause the arrest of the plaintiff thereon. His authority is denied both in his own testimony and in that of all the witnesses who testify on that subject Was it within the scope of his authority as superintendent of said company's mills? As superintendent he had general oversight of the operation of said mills, and was charged with the duty of employing and discharging operatives, and when expressly directed so to do by Mitchel, the secretary and treasurer, he was in the habit of buying and selling goods for the company. This, as the evidence shows without any contradiction, was the extent of his authority. It seems clear to us that this did not include an authority to institute or prosecute suits on behalf of the company. The duties of his office as superintendent had nothing to do with the fiscal concerns of the company. They did not include the receipt or payment of money or the collection or enforcement of demands in favor of the company.

The doctrine of *respondeat superior* applies only to acts performed by an agent within the scope of his employment. As Atkins' authority, therefore, did not include within its scope the power to institute or prosecute suits, or to delegate to another the power to do so, the company was in no way responsible for the prosecution of said suit or for the im-

prisonment of the plaintiff on execution. There being no evidence in the case tending to charge said company with any responsibility for the trespasses complained of, the court properly instructed the jury to find said company not guilty.

The evidence as to the complicity of Pinkerton in the arrest and imprisonment of the plaintiff, though conflicting, is clearly sufficient to sustain the verdict of the jury against him. If we take the evidence of the plaintiff's witnesses as true, it can not be doubted that said arrest and imprisonment were wrongful and illegal. The mandate of the writ authorized the imprisonment of the plaintiff only in case the officer was unable to find goods and chattels of the plaintiff in his county sufficient to satisfy the judgment. That the plaintiff had an abundance of personal property at hand for that purpose, the evidence establishes beyond controversy. It was the plain duty of the officer to levy his execution on said property and thus obtain satisfaction. The plaintiff and his witnesses testify that he offered said property to the Constable and demanded that he make the levy. But even if he had forbidden such levy, as Pinkerton testifies he did, we are inclined to think that the case would not have been different. The right and duty of the officer to levy did not depend upon the plaintiff's permission. It was his duty to levy whether the defendant in the execution was willing that he should do so or not, and his power to take the body of the defendant, by the terms of his writ, could arise only in case he could find no property in his county subject to levy sufficient to satisfy the writ.

The plaintiff's evidence shows that the Constable, in what he did, was acting under the advice and direction of Pinkerton, and Pinkerton thus became a trespasser equally with the officer. It is true Pinkerton denies having in any way interfered with the officer in the execution of the writ, but the jury seem to have given credence to the testimony of the plaintiff's witnesses, and we can not say that they were not warranted in so doing.

Counsel for Pinkerton claim that there was error in the giving and refusal of instructions to the jury. No attempt is made to point out wherein such error consists, and we shall

therefore decline to review the instructions in detail, but content ourselves with merely saying that we perceive no error in the rulings of the court in that respect.

The judgment, both as to the Brighton Cotton Manufacturing Company and as to said Pinkerton, will be affirmed.

*Judgment affirmed.*