## Bridget Kehoe, Appellee, v. Marshall Field & Company, Appellant.

## Gen. No. 13,916.

1. Employer and Employe—*test of determining existence of relation of.* The real tests of determining the existence of the relation of employer and employe are, to whose orders was the employe subject and where did the power to discharge repose.

2. Respondeat Superior—*when doctrine of applies; when not.* The responsibility of a master for the tortious act of his servant arises, grows out of, is measured by and begins and ends with his control over them. The negligent or wilful misconduct of the servant must not only be shown, but equally so that the act was within the scope of employment, before liability of the master is established.

3. Agency—*who not authorized to make arrest upon behalf of principal.* Doing general detective work does not impart authority

to arrest persons charged or suspected of committing criminal acts
or to assault them.

BAKER, P. J., dissenting.

Trespass on the case. Appeal from the Circuit Court of Cook
county; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard
in the Branch Appellate Court at the October term, 1907. Reversed
with finding of facts. Opinion filed May 1, 1908.

**Statement by the Court.** The original declaration
contains three counts, two for false imprisonment and
assault, and one for slander. The first count alleges
that the defendant, appellant, on October 28, 1901, ma-
liciously and wantonly, with force and arms, assaulted
the plaintiff, appellee, and then and there seized and laid
hold of the plaintiff, and with great force and violence
pulled and dragged her about, and searched the person
and removed the clothing and property of the plaintiff,
and accused the plaintiff of the crime of larceny; and
forced her to go along divers public aisles, passage-
ways and streets into a room, and there imprisoned
the plaintiff and detained her, without any reasonable
or probable cause, for the space of one hour, all of
which was against the will of the plaintiff.

The second count alleges that on October 28, 1901,
the defendant maliciously and wantonly arrested the
plaintiff, and then and there beat and bruised and ill-
treated her, and then and there imprisoned her and
kept and detained her in prison, without any reason-
able or probable cause whatsoever, for a long time,
to wit: for the space of one hour.

The third count sets up various alleged slanders.

To this declaration the defendant pleaded the gen-
eral issue.

On May 28, 1903, by leave of court, the plaintiff filed
five additional counts to her declaration. The first
additional count is the same, in substance, as the first
original count. The second additional count alleges
that the defendant made another assault upon the
plaintiff, and hit, bruised and ill-treated her and kept

and detained her in prison without any reasonable or probable cause for the space of one hour.

The third additional count alleges an assault upon the plaintiff by the defendant.

The fourth and fifth additional counts allege various slanders.

To these additional counts the defendant pleaded the general issue. And to the fourth and fifth additional counts the defendant also pleaded the Statute of Limitations.

The plaintiff demurred to the plea of the Statute of Limitations. The demurrer was overruled by the court and plaintiff elected to stand by her demurrer.

On the trial the jury returned a verdict finding the defendant guilty, and assessing plaintiff's damages at $5,000. The court overruled defendant's motions for a new trial and in arrest of judgment, and entered judgment on the verdict.

The evidence tends to show that the plaintiff, Bridget Kehoe, left her home in Chicago on October 28, 1901, and went to the store of appellant, Marshall Field & Company, on State street in Chicago. She wore two capes, one a light silk cape, and the other a mackintosh cape which came down to her hips. She arrived at the store at about one o'clock in the afternoon and proceeded to the lace department in the basement. She there examined a piece of lace. She testified that her sight was dim and she could not see very well, that she put her hand under her cape to procure her spectacles, and put her spectacles on and examined the lace. She then put the lace down and left the counter. She then went about the store a little, and took an elevator to the rest room on the second floor. While there she went into the ladies' toilet room. When she came out of the rest room she took an elevator to the first floor, went out of the store on Washington street and proceeded west on that street. When she reached a point about half a block from the store on the north side of Washington street, Coch-

rane, a private detective employed by the McGuire & White Detective Agency, and stationed by that agency at the store of appellant to do detective work, stepped up to her and asked her to give him the lace which she had, or return to the store and pay for it.

Appellee thereupon threw up her hands and cried out: "He is trying to rob me," and appealed to the crowd to assist her. A letter-carrier came up immediately and appellee appealed to him. He summoned McCarthy, a policeman, who stepped between appellee and Cochrane, and demanded of the latter who he was and what he was doing. Whereupon a conversation occurred between appellee, Cochrane and the policeman. The result of the conversation was that appellee agreed to return to the store, if the policeman would go with her. This the policeman agreed to do, and she returned to the store with the policeman, Cochrane walking in advance of them.

When they arrived at the store of appellant, they went to a small room on the first floor and appellee demanded to be searched. Cochrane procured a maid from the ladies' waiting-room, Miss McNeil, who went to the room and appellee demanded of her that she be searched. Miss McNeil, now Mrs. Hartwig, closed the door of the room and searched appellee. This occupied five or six minutes. Mrs. Hartwig found no lace on appellee and left the room, and the policeman, who had remained in the store up to this time, went away. Appellee left the store shortly thereafter and went to see her son, who was employed about a block from the store. She then proceeded with her son to consult a lawyer, and later went to her home. This action for damages followed.

Benson Landon, for appellant; William S. Forrest, of counsel.

Thomas E. Rooney, Ferdinand Goss and Charles S. McNett, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

It is urged as a ground of reversal of the judgment that appellant did not bear such relationship to Cochrane, the detective, as makes it responsible for any of his acts, under the doctrine of *respondeat superior.*

The only direct testimony in the case as to the relationship of Cochrane to appellant and his authority from appellant is that of Cochrane. His testimony shows that he was employed and paid by the McGuire & White Detective Agency, and not by appellant, and that his duties were "to do general detective work." He received his instructions as to his duties in the store of appellant from McGuire of the detective agency, to whom he reported. He never received any salary or wages from appellant or any of its officers, nor did he at any time receive any directions or instructions from appellant.

Neither party to this action offered any evidence on the trial of the contract between appellant and the McGuire & White Detective Agency. The court is left to the inferences which may properly be drawn from the testimony of Cochrane and the facts in evidence to determine whether Cochrane was subject to appellant's orders and control, and was liable to be discharged by it for disobedience of orders or misconduct. These are the real tests, according to the authorities, by which to determine whether Cochrane was acting as the servant of appellant. Wood on Master and Servant, secs. 281, 317; Wadsworth Howland Co. v. Foster, 50 Ill. App. 513, affirmed in 168 Ill. 514.

In Pioneer Construction Co. v. Hansen, 176 Ill. 100, it is said, at page 108: "He is the master who has the choice, control and direction of the servants: The master remains liable to strangers for the negligence of his servants, unless he abandons their control to the hirer. Control of servants does not exist unless the hirer has the right to discharge them and employ others in their places. The doctrine of *respondeat superior* is applicable where the person sought to be

charged has the right to control the action of the person committing the injury. It follows that the right to control the negligent servant is the test by which it is to be determined whether the relation of master and servant exists; and, inasmuch as the right to control involves the power to discharge, the relation of master and servant will not exist unless the power to discharge exists. (Shearman & Redfield on Negligence, p. 892, sec. 12; Erie v. Caulkins, 85 Pa. St. 247.)" See also Condon v. Schoenfield, 214 Ill. 226.

"The responsibility of a master for the tortious acts of his servants arises, grows out of, is measured by and begins and ends with his control over them. (McGuire v. Grant, 25 N. J. L. 356.)" Crudup v. Schreiner, 98 Ill. App. 337, 340. As said in Penny v. N. Y. Cent. R. R. Co., 53 N. Y. Supp. 1043, 1045: "The negligent or wilful misconduct of the servant must not only be shown, but equally so that the act was within the scope of employment, before liability of the master is established."

Applying these tests to the proof in this case, we think liability is not established. We cannot infer from the testimony of Cochrane that he was employed by appellant or that he was controlled and directed by it. We find no ground for inference in the evidence that the McGuire & White Agency had abandoned the control of Cochrane to appellant, or that appellant had any power to discharge him. We are compelled to hold, therefore, that the evidence fails to establish the relation of master and servant between appellant and Cochrane, and that the former is not liable for the latter's act.

But if Cochrane was in some sense the servant of appellant so that the doctrine of *respondeat superior* is applicable, we find no basis in the evidence for the inference that his acts, as testified to by appellee, were within the scope of his employment. What Cochrane did is not evidence that he was authorized to do it by appellant. His testimony to the effect that he was

directed "to do general detective work" does not prove that he was authorized to assault appellee in the manner and with the force described by her. Doing general detective work does not impart authority to arrest persons charged or suspected of committing criminal acts, or to assault them. Penny v. N. Y. Cent. R. R. Co., *supra.* "The doctrine of *respondeat superior* applies only to acts performed by an agent within the scope of his employment." Pinkerton v. Gilbert, 22 Ill. App. 568.

Appellant's contention on the evidence in the case is that the verdict is supported only by the testimony of the plaintiff, and that she is contradicted by several witnesses in essential particulars; and there being no elements of probability to turn the scale in favor of appellee, the verdict is against the weight of the evidence, and should be set aside.

It appears from the evidence that Cochrane and Clausen, the latter being at that time in the employ of appellant as a sales clerk, but at the time of the trial was in no way connected with appellant, each acting independently of the other, observed the movements of appellee at the lace counter. They saw her take a piece of lace off the counter and conceal it under her cape and walk away, and that they followed her to the rest room on the second floor. When she came out of the rest room they followed her to the street. When appellee was about midway between State and Dearborn streets, on the north side of Washington street, Cochrane accosted her. At this point there is a radical conflict in the evidence as to what occurred. Appellee testified that Cochrane grabbed her on the shoulder in such a way as to inflict serious injury thereto, and demanded that she go with him to appellant's store; that he pounded her on the breast with his fingers, in the presence of the policeman; that she returned with a policeman and Cochrane to appellant's store and was there searched and then permitted to go.

We are of opinion, however, from a consideration

Martin Emerich O. Co. v. Siegel, Cooper & Co.

of the evidence, that appellee was not assaulted on the street, and that she was not arrested at any time, as testified by her; that she returned to appellant's store willingly, either at her own suggestion or at the suggestion of the policeman who at her request agreed to accompany her, and that upon this arrangement between her and the policeman, appellee went back to the store for the purpose of being searched, in order to clear herself of any suspicion that she had the lace, and that the search that took place at the store was made pursuant to such agreement.

The testimony of appellee is in some respects improbable and unreasonable. As given on the trial before us it differs in essential particulars from her testimony on a former trial, and it is contradicted in essential particulars by the other witnesses, who appear to be disinterested, and who give more reasonable accounts of what actually transpired. We think the verdict and judgment should be reversed, as against the decisive weight of the evidence.

The judgment is reversed, with a finding of fact.

*Reversed, with finding of fact.*

Mr. Presiding Justice BAKER dissenting.