BEARDSLEY v. HOWARD & BULLOUGH AMERICAN MACH. CO., Limited.

(Circuit Court, D. Rhode Island. February 18, 1910.)

No. 2,882.

1. MASTER AND SERVANT (§ 264*)—INJURIES TO SERVANT—ACTION—VARIANCE.

In an action for injuries to a servant, where the negligence charged is the failure to provide plaintiff with flanges to use in connection with an emery wheel, evidence of the use of collars on each side of the wheel of about one-third of the diameter of the wheel was not such a variance as to render the evidence inadmissible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 861–876; Dec. Dig. § 264.*]

2. WORDS AND PHRASES—"COLLAR."

A "collar," in mechanics, is a ring or a round flange upon or against an object.

3. WORDS AND PHRASES—"FLANGE."

A "flange" is defined as a projecting flat rim, collar, or rib used to strengthen an object, to guide it, to keep it in place, etc.

4. NEW TRIAL (§ 97*)—GROUNDS—SURPRISE—DILIGENCE.

In an action for injuries caused by the breaking of an emery wheel from failure to furnish plaintiff with flanges to strengthen it, surprise at the trial at the submission of the issue whether flanges furnished were of sufficient size, instead of the issue raised by the pleadings whether any flanges were furnished, is not ground for a new trial, where no continuance was requested.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 195–198; Dec. Dig. § 97.*]

5. MASTER AND SERVANT (§ 265*)—INJURIES TO SERVANT—ACTIONS—BURDEN OF PROOF.

In an action for injuries caused by the breaking of an emery wheel. the negligence alleged being the failure to furnish plaintiff with flanges, the burden is on plaintiff to show not only that defendant furnished improper appliances, but that the injury resulted from the particular defects pointed out.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908; Dec. Dig. § 265.*]

6. MASTER AND SERVANT (§ 276*)—INJURIES TO SERVANT—ACTION—SUFFICIENCY OF EVIDENCE.

In an action for injuries to a servant by the breaking of an emery wheel, resulting from failure to furnish plaintiff with flanges to use in connection with the wheel, the plaintiff must show not merely that the injury might have resulted from the defect named, but that it did, in fact, so result.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–976; Dec. Dig. § 276.*]

7. MASTER AND SERVANT (§ 276*)—INJURIES TO SERVANT—ACTIONS—SUFFICIENCY OF EVIDENCE.

In an action for injuries to a servant from the breaking of an emery wheel, evidence *held* insufficient to show that the accident resulted from

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the negligence alleged, viz., failure to furnish plaintiff with flanges for the wheel.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 276.*]

Action by Ernest J. Beardsley against the Howard & Bullough American Machine Company, Limited. Judgment for plaintiff, and defendant petitions for a new trial. Granted.

A. B. Crafts and M. L. Lizotte, for plaintiff.

Vincent, Boss & Barnfield, for defendant.

BROWN, District Judge. This is an action for personal injuries received by the plaintiff June 3, 1908, from the bursting of an emery wheel during the employment of the plaintiff as a polisher in the defendant's factory.

The declaration alleged that the emery wheel was—

"run and used without flanges attached thereto on the sides thereof, and that the running of said emery wheel as aforesaid, without flanges attached thereto as aforesaid, was very dangerous and improper, and unsafe, and rendered said emery wheel liable and apt to break and burst," etc.

The negligence charged is the failure—

"to provide the plaintiff with flanges to use in connection with emery wheels, or to inform the plaintiff that said flanges were necessary, or advisable in connection with said wheels."

"The plaintiff alleges that on a certain day while he was cleaning or dressing said wheel, revolving as aforesaid, in the exercise of all reasonable care and caution, and wholly ignorant of the danger to which he was exposed as aforesaid, the said wheel, by reason of its revolving rapidly as aforesaid without flanges to keep it steady and prevent its bursting as aforesaid, suddenly broke and burst into divers flying pieces," etc.

Upon the trial the plaintiff departed from the allegations of the declaration, testifying that the wheel broke before he had started to clean it; that he had set the wheel up in the usual manner, and had been working on it for an hour and a half, when he went to get a dressing tool, and had just seated himself preparatory to dressing the wheel when the wheel burst; that he was not then touching the wheel, either for work or for dressing.

The plaintiff testified that on the day of the accident he set up the wheel with the same implements that he had safely used for 14 months for similar wheels; that he first put upon the shaft a collar 2½ inches in diameter and about 1 inch long, then the wheel, which was about 4¾ or 5 inches in diameter and 4 inches across its grinding face, and next a second collar 2¼ inches in diameter and 3 inches long; the whole being secured by a nut.

At the trial the defendant contended that the allegation that no flanges had been provided was disproved by plaintiff's own testimony to the effect that flanges of 2¼ and 2½ inches in diameter had been supplied and used, and objected to evidence tending to charge the defendant with negligence on the ground that the flanges were of insufficient size. This objection was overruled, and exception duly taken.

While I am of the opinion that there was not such a variance as to render the evidence inadmissible (Baltimore & Potomac R. Co. v.

Cumberland, 176 U. S. 232, 20 Sup. Ct. 380, 44 L. Ed. 447; Grayson v. Lynch, 163 U. S. 468–476, 16 Sup. Ct. 1064, 41 L. Ed. 230), there is ground for thinking that the jury may have been misled by the arguments of counsel and by the testimony of the plaintiff and of experts as to flanges.

Thus, the plaintiff testified that he was provided with no flanges, and expert witnesses testified that an emery wheel would not be properly set up unless it had flanges.

It was contended at the trial that the collars used were not flanges, and counsel for the plaintiff still insists upon the distinction between collars and flanges, and asserts that "a flange is a flat circle something like a plate; average three-fourths inch thick," etc.

It is apparent, however, from the plaintiff's testimony, that whether proper appliances for setting up the wheels were furnished was merely a question of abutting surfaces, and that the distinction between "collars" and "flanges" was largely verbal and tended to confusion. A "collar" is a "ring or round flange upon or against an object." See Knight's Mechanical Dictionary. A "flange" is defined in the New English Dictionary:

"(2) A projecting flat rim, collar or rib used to strengthen an object, to guide it, to keep it in place, etc."

In support of the petition for a new trial, the defendant insists that there was a substantial difference between the issue raised by the pleadings, i. e., whether it had furnished flanges for the lateral support of the wheel, and the issue submitted to the jury, as to whether the flanges furnished were of sufficient size; and contends that it was prejudiced through having to meet on the trial a new issue not made by the pleadings. As no continuance was requested on this ground, the defendant cannot now claim surprise as a ground for a new trial; yet the defendant's argument on this point is not without force when we consider the defendant's further point that there is no testimony showing that the wheel actually became broken on account of insufficiency in the size of the flanges.

Assuming—what, in view of the indefiniteness of the expert testimony, is by no means clear—that there was evidence sufficiently specific and definite to show that the flanges used were less than one-third of the diameter of the wheel, or less than would conform to expert opinion or standards, we are still met by the fact that no witness in the case, expert or other, has given an opinion or reason for believing that this alleged departure from expert standards was in fact the cause of the breaking of the wheel.

If the defendant is to be charged with negligence because appliances which the plaintiff had operated safely for 14 months are subject to expert criticism and fall below expert standards, it can only be made liable upon supplemental proof showing that the wheel broke because of some effect upon it resulting from the size of the flanges actually provided, and which would not have resulted from the use of such flanges as the experts say should have been provided.

There are few machines which cannot be made the subject of expert criticism, and the mere fact that the defendant's flanges were some-

what smaller than the standards set by experts is not in itself a sufficient ground of liability.

There is no evidence from which an inference is warranted that there was any actual connection between the bursting of the wheel and the fact that the flanges were, in the opinion of experts, somewhat too small. There is no testimony from any witness to the effect that the breaking of the emery wheel was in fact due to any deficiency in the size of the collars or flanges, or that the wheel itself exhibited any evidence that it had been weakened by the use of collars or flanges of insufficient size. There was merely testimony that in the opinion of witnesses the wheel was not properly set up because the collars were of insufficient size, and that it was possible that the tightening of the nut during the work should exert an undue pressure upon the wheel.

Under decisions of the Supreme Court, the burden was upon the plaintiff to show not only that the defendant furnished improper appliances, but that the injury resulted by reason of the particular defects pointed out and insisted upon by the plaintiff. See Looney v. Metropolitan Railroad Company, 200 U. S. 480–486, 26 Sup. Ct. 303, 50 L. Ed. 564; Texas & Pacific Railway Company v. Barrett, 166 U. S. 617–619, 17 Sup. Ct. 707, 41 L. Ed. 1136.

The plaintiff did not ask either of his three experts to give an opinion as to the actual cause of the breaking of this particular wheel, or to examine the wheel and to point out to the jury any feature of the broken wheel that would indicate the cause of the breaking. Defendant's counsel, however, upon cross-examination of plaintiff's expert Leaver, asked:

"CQ. Well now, what do you say was the cause of the breaking of this wheel, there being no force exerted upon it at the time?
"A. I should think that it was cracked when the man was using it, grinding with it, and when he went around in back of it it was working away from the collars all the time, and when he got around in back it parted.
"CQ. That is to say, you think he bore hard enough on it to crack it?
"A. It must have been something like that."

He also testified that a wheel with proper flanges might be broken:

"A. A man might be grinding something on it, and touched it too hard. It would not take a very sharp rap to break an emery wheel."
"CQ. And the durability of these wheels depends largely on the carefulness of the man who works on them?
"A. Yes, sir.
"CQ. It is competent or possible for a man, by bearing down too hard, to break any of them, is it not?
"A. Not alone by bearing on too hard, but an unsteady pressure."

Plaintiff's expert Richmond, manufacturer of the wheel, was asked:

"Q. If a wheel like this one, having been worn down as this one has, was properly put up on a spindle, in a proper frame, would it burst?
"A. It might be broken from a half a dozen causes. It would not burst of its own accord.
"Q. If there was a strain upon these washers, bringing it together that way, a heavy strain, and these collars being there without any washers—without any flanges—then what do you say as to whether or not it would have a tendency to break?
"A. It would have a tendency; yes, sir."

Mr. Richmond also testified that it would be possible for anybody who was using a wheel of this size to put pressure enough on it to break it.

Upon the question of the existence of a flaw in the material of the wheel the evidence was conflicting, and upon this petition for a new trial it may be assumed that the evidence was insufficient to convince the jury, and that a concealed flaw was the cause of breakage. The pieces of the wheel were produced in court; but the exhibit itself is not of such a character as to enable a jury, without the aid of expert testimony, to determine therefrom the cause of breakage.

Reviewing then the evidence as to the cause of breakage, we find that the plaintiff, an experienced man, tested the wheel by looking it all over and rapping it, and found it all right; that he set it up with the same appliances that he had used for 14 months and in the same way; that he then used the wheel for about an hour and a half, polishing stay brackets, until the wheel needed cleaning off; that he then "set the rest on the back of the wheel to clean the wheel off"; that he then got the dresser and was going to touch the wheel with it, when he was knocked unconscious; that the wheel flew off at a time when there was no pressure being exerted upon it.

In the opinion of the plaintiff's experts the wheel must have been cracked during the previous grinding before the plaintiff went for his dressing tool.

It seems an unavoidable conclusion from the testimony for the plaintiff that the wheel was cracked while under pressure, either from the work of grinding, or from the work of cleaning or dressing the wheel, as is alleged in the declaration. The burden was upon the plaintiff to show something more than a possibility that there was an undue lateral pressure resulting from insufficient flanges.

Accepting the testimony of the plaintiff that the break did not happen while he was cleaning the wheel, there is no evidence which will support a verdict to the effect that the wheel first became cracked during the short time that it was running without pressure upon it. Accepting the conclusion of plaintiff's experts that it must have become cracked during its use in grinding, it is impossible to say, upon the present record, that the plaintiff has shown that the supposed insufficiency of the flanges was the actual cause, or even a contributing cause, of the breaking of the wheel. It was left as a mere matter of conjecture as to what caused the wheel to crack.

Upon the question of the sufficiency of the proofs to show the liability of the defendant, the case comes within the rule stated in Patton v. Texas & Pacific Railway Co., 179 U. S. 658–663, 21 Sup. Ct. 275, 277, 15 L. Ed. 361:

"It is not sufficient for the employé to show that the employer may have been guilty of negligence; the evidence must point to the fact that he has.

"And when the testimony leaves the matter uncertain and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes, and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion. If the employé is unable to adduce sufficient evidence to show negligence on the part of the employer, it

is only one of the many cases in which the plaintiff fails in his testimony, and no mere sympathy for the unfortunate victim of an accident justifies any departure from settled rules of proof."

The defendant also urges that the damages are excessive, and asks for a new trial upon this ground independently of the question of liability. I am of the opinion that the amount of damages is so much larger than the testimony warrants as to justify the setting aside of the verdict on this point alone; but, as a new trial must be granted for the reason that the testimony is insufficient to show liability, it is unnecessary to consider to what extent the damages are excessive.

The petition for a new trial is granted.