**METAL COATING CORPORATION, a
Delaware corporation, Plaintiff,**

v.

**BAKER MANUFACTURING COMPANY,
a Wisconsin corporation, Defendant.**

**Civ. A. No. 3550.**

United States District Court
W. D. Wisconsin.

March 31, 1964.

William A. Marshall, Merriam, Smith
& Marshall, Chicago, Ill., D. V. W. Beckwith, Beckwith & Hollern, Madison,
Wis., for plaintiff.

Joesph G. Werner, Orr, Isaksen,
Werner & Lathrop, Madison, Wis., for
defendant.

RABINOVITZ, District Judge.

This is a patent infringement case.
Defendant filed three motions for summary judgment. The first motion is as
to the entire case. The second motion
is that claims 1–10, 17 and 20 of the

Taylor patent have not and are not infringed by defendant. The third motion is that claims 4–6, 11–14, 16, 17 and 20 of the Taylor patent have not and are not infringed by defendant.

Plaintiff is the owner by assignment of the S. M. Taylor Patent, Number 3,030,891, issued on April 24, 1962. Taylor made three applications for a patent. This court has carefully reviewed the Patent Office file wrappers, which constitute the applications. Certified copies are on file and part of the record. Examples of the floats made by plaintiff and defendant are also part of the record. The court has also considered the briefs and oral arguments of the parties.

The Taylor Patent concerns a liquid supply pumping system and in particular, the air-water separator float used in hydro-pneumatic tanks. Claims 4–6, 11–14, 16, 17 and 20 refer to the disk float. Plaintiff and defendant both make such floats for use in hydro-pneumatic tanks. The floats are made of polystyrene, a plastic. Defendant's float is a flat, segmented circular disk. It is segmented so that it may be inserted in pre-existing water tanks through a small water inlet hole. When inserted and assembled, it forms a flat, rigid, circular disk.

The plaintiff's float is also a flat, circular disk, which is solid. The float has a ridge or rim surrounding the side or edge of the float. Further description will appear in the course of this Opinion.

At the hearing on this matter, plaintiff argued to the effect that the entire float constitutes a flange; and that whether it is or is not amounts to a question of fact. Plaintiff asserts summary judgment is not appropriate.

This argument must be rejected. The meaning of the word "flange" is common; it is not, even in this patent case, used as a technical word of art. The word "flange" has been defined as a "projecting flat rim, collar or rib used to strengthen an object, to guide it, to keep it in place * * *." Beardsley v. How-ard & Bullough Am. Mach. Co., 176 F. 619 (D.R.I., 1910). "A shoe 'eyelet' is a hollow cylindrical barrel made of metal, one end of which terminates in a spread-out portion called a 'flange.'" United Shoe Mach. Corp. v. Atlas Tack Corp., 27 F.Supp. 499 (S.D.N.Y., 1939). Webster's New International Dictionary of the English Language (1928), defines "flange" as follows: "A part that spreads out like a rim. * * * An external or internal rib, or rim, for strength, as the *flange* of an iron beam. * * * To spread out; to assume the flange form."

The question concerning the extent of the flange does not present a genuine issue of fact, required to preclude summary judgment. In this case, there are no factual issues which require the testimony of expert witnesses. The floats here are sufficiently simple in design so that this court, by observation, can comprehend them. Ronel Corp. v. Anchor Lock of Florida, Inc., 325 F.2d 889 (5th Cir., 1963); Magee v. Coca-Cola Co., 17 F.R.D. 10 (N.D.Ill.E.D., 1955).

A procedural clarification should be made. Defendant's second and third motions are for "summary judgment". These motions do not go to the entire cause of action, but only to a part of the claim. While Rule 56(d), Federal Rules of Civil Procedure, permits "partial" summary judgments, such judgment or order can be granted only when the judgment is to the whole of one of several claims joined in an action. Where, as here, the effect of the granting of a motion for "summary judgment" is to merely rule that as to certain issues within a cause of action, no genuine issue of fact remains, the proper procedure is for the court to enter a pre-trial type order to that effect. Biggins v. Oltmer Iron Works, 154 F.2d 214 (7th Cir., 1946); E. I. DuPont De Nemours and Company v. United States Camo Corp., 19 F.R.D. 495 (W.D.Mo.W.D., 1956).

Taylor's first application to the Patent Office contained no reference to a float having a flanged peripheral edge. Taylor merely refers to a flat disk. He sug-

gests that the float may be made of polyethylene sheets laminated with a more buoyant material and wherein the peripheral edge of the laminated structure is covered and sealed with a tough waterproof coating which may be polyethylene. Satisfactory materials include cork and wood covered or coated with a tough water-proofing surface. In none of the claims listed by Taylor in his initial application was there any indication of a float disk having a flanged peripheral edge. Claim seven did state that turbulence is substantially eliminated by positively and physically separating the liquid from the air in the tank. Separation was to be accomplished by the flat float or disk. It should be noted that in all applications, the objective of the float remained the same. That it was an improvement over the prior art, not taught by the earlier art. However, in the second and third applications for a patent, the function and value of the float was accomplished because the float contained a peripheral edge extending above and below the disk itself. Taylor in his first application claims that his flat disk reduces turbulence below the disk. In his second and third applications, he claims the same, and more, because of the flanged peripheral edge.

In the second and third applications, Taylor describes his float as having a central web (basically the disk itself), a peripheral flange, a centrally located hole, and a ridge or flange surrounding the hole. The two flanges are intended to be the same height, about one inch. There are holes uniformly spaced at the edge of the central web adjacent to the peripheral flange, where the central web meets the peripheral flange. Taylor states that the central web should be about one-quarter of an inch thick; and that such thickness has proved to be satisfactory.

Taylor went to great lengths in his second and third patent applications to demonstrate the purpose, function and utility of the flanged peripheral edge on his float. In particular, Taylor had to distinguish the prior art, partially represented by the Gould patent. The Gould patent involved, in part, a flat, unflanged wood or cork disk. Taylor stressed the function and uniqueness of his float, which has a peripheral flange extending above and below the central web or disk.

The flange was described as providing an extended, substantially annular column of water between the flange and the tank to inhibit the infiltration and absorption of additional air into the water contained in the tank. The flange further serves as a turbulence deflector for the incoming water. By this Taylor means that the air-water annulus is not further disturbed by the incoming water. Hence, the absorption of air into the water is kept at a minimum. Taylor stated: "Still further, it has been found that with a flat disk, there is a tendency for diffusion of air to occur under the disk at a fairly rapid rate."

The Patent Office Examiner determined that there was no invention over Gould's flat float by use of the flanged edge.

In Amendment "F" of the second application Taylor stated: "Further, applicant discovered that by providing the liquid-gas separator float with a peripheral flange that extends below the lower face of the disk, he could increase the depth of the water annulus and thereby prevent water from being absorbed below the float and provide an effective annular barrier. Although one might also increase the depth of this air-saturated annular barrier by providing a flat disk of increased thickness and proper density, the water annulus becomes disrupted when water is introduced to the tank and an additional loss of air is incurred. This disturbance is obviated by providing the float with a peripheral flange that serves as a turbulence deflector for incoming water, as well as its other function of providing an annular barrier."

Taylor stated in his application: "Still further, when a flat disk of increased thickness and proper density is constructed so that the extra thickness is sufficiently below the surface of the

water to provide an effective annular barrier, the enlarged disk decreases the effective volume of the tank a significant amount. On the other hand, applicant's flange provides an effective barrier with a minimum decrease in the effective volume of the tank (lost to the float), which is an important factor."

In Taylor's third application for a patent, the remarks and representations were substantially to the same effect in respect to the float as contained in the second application.

■ The net effect of an examination of the three file wrappers is that Taylor started out with a simple, flat, unflanged float; that in order to procure a patent, he abandoned that structure—he rejected it from the scope of his invention in subsequent applications; that he adopted a float having a different physical description which was claimed not to be encompassed by the prior art; and that upon this basis, the Patent Office granted a patent.

In Oregon Saw Chain Corporation v. McCulloch Motors Corporation, 323 F.2d 758 (9th Cir., 1963), the court cited an earlier Ninth Circuit case as follows:

"Having asserted the novelty of the right angle principle in order to secure the patent, applicant cannot now expand his coverage to include other claims which were denied to him in the proceedings before the patent office. This is simply the exercise of the doctrine of 'file wrapper estoppel'—the gravamen of which is that an applicant who acquiesces in the rejection of his claim, and accordingly modifies it to secure its allowance, will not subsequently be allowed to expand his claim by interpretation to include the principles originally rejected or their equivalents."

The court in AMP, Incorporated v. Burndy Corporation, 215 F.Supp. 3 (D. Del., 1963), well stated the application of the doctrine in this way:

"The doctrine of file wrapper estoppel teaches an applicant for a patent whose claims are rejected and who later amends his claim, either by adding limitations or by cancelling the claims and inserting other claims that are more limited, is thereafter estopped to assert any interpretation of his restricted claims that does not give more to the added limitations. Added limitations are strictly construed against the patentee and are regarded as disclaimers of everything else in the claims. For example, the patentee cannot, after the issue of his patent, broaden his claim by dropping the element which he was compelled to include in order to secure his patent. * * * In short, the inventor may not have recourse to recapture claims which he surrendered by amendment."

It would seem clear that the addition of a flange to the float is a distinct limitation on what normally would be encompassed by the term "disk float". For the patentee to now expand the scope of the term used to secure a patent would completely ignore the basis upon which the Patent Office granted the patent. Lewis v. Avco Mfg. Co., 228 F.2d 919 (7th Cir., 1956). This court cannot allow a patentee to have that which he has given away.

■ Defendant's motion for summary judgment on the entire case is denied. At oral arguments, it appeared that defendant recognized the inadvertent mistake on the part of plaintiff's attorney in drafting the reply to defendant's counterclaim. The court orally indicated that it was allowing the amended pleading. Amendment of pleadings is liberally allowed in the federal courts. Pleading is no longer the delicate art which existed under the early common law. Today, a misstep will not be decisive of the outcome of the case. Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The facts clearly warrant the amendment; to do so is in the interests of justice. Huse v. Consolidated Freightways, Inc., 227 F.2d 425 (7th Cir., 1961).

■ The court has considered defendant's second motion, concerning claims 1–10, 17 and 20. Claims 17 and 20 are covered in the third motion. A letter from the attorney for plaintiff to defendant's attorney forms the basis of the second motion. The court does not intend to, nor should it, ferret out the meaning of the letter at this time. Defendant's motion that claims 1–10, 17 and 20 of the Taylor patent have not been and are not ·being infringed is denied.

Defendant's third motion for summary judgment that claims 4–6, 11–14, 16, 17 and 20 of the Taylor patent have not been and are not being infringed is granted. The order, however, is substantially in the nature of a pre-trial order. As to claims 4–6, 11–14, 16, 17 and 20 no genuine issue of fact exists which must be tried.

The foregoing opinion incorporates the court's findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

It is so ordered.

### SUPPLEMENTAL OPINION

This morning, March 31, the Court received an additional citation from plaintiff's attorney regarding summary judgment, Kollsmen Instrument Corporation v. Astek Instrument Corp., D.C., 225 F.Supp. 534 (S.D.N.Y., 1964). Defendant's motion for summary judgment was brought under Rule 56(b). The motion was the defendant was not presently infringing. There still remained the issue of past infringement, the trial of which will involve the validity of the patent. The denial of the motion was held to be within the discretion of the court. A further basis for the denial of the motion was that the "field is technical, the experts are in disagreement, the position in the art of the patent in suit must be understood, the commercial effect of the patent in suit may be relevant, etc. These considerations have shaped an attitude of extreme caution —at least in this Circuit—in granting summary judgment in patent cases."

■■ This Court is not unmindful of the fact that great caution must be exercised in the granting of summary judgment in patent cases. However, the case at bar does not present the complicated technical considerations which beset the court in Kollsman. The file wrappers, while voluminous, are not complicated.

"Summary judgment" is not strictly being granted in this case. This Court has made an order the effect of which is to conform to Rule 56(d), which reads as follows:

"If on motion under this rule judgment is not rendered upon the whole case * * * and a trial is necessary, the court at the hearing of the motion, * * * shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, * * *, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly."

Rule 56(d) permits a simplification of issues for trial. It serves a purpose quite similar to a pre-trial order. Under the facts this is a proper case for the granting of "partial summary judgment" in conformity with Rule 56(d).

This Court appreciates the attention given to this matter by counsel. The considerations reflected in the Opinion and Order and in this Supplemental Opinion nevertheless require that the disposition of the case set forth in the Opinion remain unchanged.

It is so ordered.