GARY BOLLINGER, a Minor, by Bill Bollinger, his Father and Next Friend, Plaintiff-Appellant, *v.* JOE A. SCHNEIDER, Sheriff of Rock Island County, *et al.*, Defendants-Appellees.

Third District   No. 78-153

Opinion filed October 16, 1978.

Marshall E. Douglas, of Jackson, Douglas, DePorter & Schmidt, of East Moline, for appellant.

Dennis R. Fox, of Califf, Harper, Fox & Dailey, of Moline, for appellees.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This action was commenced on behalf of plaintiff, Gary Bollinger, a minor, against defendants, Joe Schneider, Sheriff of Rock Island County, various Rock Island County deputy sheriffs and the County of Rock Island, to recover for injuries plaintiff sustained when he was physically and sexually assaulted by other inmates while confined in the juvenile section of the Rock Island County jail. The circuit court of Rock Island County dismissed the action and plaintiff appealed.

On September 28, 1976, plaintiff filed a complaint against defendants. According to the complaint, on December 19 and 20, 1975, plaintiff was confined in the juvenile section of Rock Island County jailhouse and that while plaintiff was so confined, defendants owed a general duty of care to plaintiff. Plaintiff alleged that various wilful, wanton and malicious acts of the individual defendants were the proximate cause of plaintiff's injuries. As to the County of Rock Island, plaintiff alleged only negligent acts or omissions.

Plaintiff generally alleged that he was placed in the same cell with prisoners with known assaultive and vicious propensities; that the defendants failed to properly supervise, control and inspect the juvenile section of the jail; that defendants failed to separate plaintiff from the attacking inmates and that defendants failed in their ministerial duty to keep plaintiff safe from assaults from other prisoners. Defendants filed a motion to dismiss, asserting in part several immunities provided by the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1975, ch. 85, par. 1—101 *et seq.*, hereinafter referred to as the Tort Immunity Act) and the existence of public officials' immunity. The trial court granted defendants' motion and in a written opinion ruled that defendants were immune by reason of the Tort Immunity Act as well as "quasi-judicial immunity." Plaintiff was allowed to file an amended complaint, but the court ruled plaintiff had to allege that the acts and conduct of defendants were from "corrupt and malicious motives," relying on *Thiele v. Kennedy*, 18 Ill. App. 3d 465, 309 N.E.2d 394. Plaintiff's first amended complaint failed to include any such allegation and was dismissed upon motion of defendants, but with leave to file a second amended complaint. Plaintiff's second amended complaint also did not contain any allegation of corrupt and malicious motives, as had been required by the trial court, but did allege the existence of a policy of insurance which insured the defendants against the acts complained of in the complaint. Plaintiff's second amended complaint was dismissed with prejudice and plaintiff has appealed from that dismissal. The parties have raised two issues for our consideration. We must determine whether the

defendants are immune from suit by reason of the immunities provided by the Tort Immunity Act and if so, the extent, if any, to which those immunities are waived by the defendants' purchase of insurance affording coverage for the acts or omissions alleged in the complaint.

The immunities asserted as a bar to plaintiff's complaint include sections 2—201, 2—109, 4—102 and 4—103 of the Tort Immunity Act. (Ill. Rev. Stat. 1975, ch. 85, pars. 2—109, 2—201, 4—102, and 4—103.) Section 2—109 grants the public entity the same protection from liability given to the employee of the public entity. Section 2—201 provides that:

> "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." (Ill. Rev. Stat. 1975, ch. 85, par. 2—201.)

Sections 4—102 and 4—103 provide respectively:

> "Neither a local public entity nor a public employee is liable for the failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes and failure to apprehend criminals." Ill. Rev. Stat. 1975, ch. 85, par. 4—102.

> "Neither a local public entity nor a public employee is liable for failure to provide a jail, detention or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel or facilities therein." Ill. Rev. Stat. 1975, ch. 85, par. 4—103.

■■ In a factual setting similar to the present, this court recently considered section 2—201 and 2—109 in *Thiele v. Kennedy*, 18 Ill. App. 3d 465, 309 N.E.2d 394. In *Thiele*, the plaintiff alleged that while she was an inmate in the Peoria County Jail, certain other inmates inflicted bodily harm upon her. It was alleged that the defendants, sheriff of Peoria County and County of Peoria, were each guilty of wilful and wanton acts in allowing plaintiff to be exposed to dangerous persons. No allegation of the existence of public liability insurance was made. After examining certain historical antecedents to section 2—201, the court found that the defendants had been granted immunity by section 2—201, but that such immunity was conditioned upon good-faith exercise of discretion and extended only to acts not resulting from corrupt or malicious motives. Although there were certain aspects of the problem not discussed in *Thiele*, as is illustrated by *Huey v. Town of Cicero*, 41 Ill. 2d 361, 243 N.E.2d 214; *Madden v. Kuehn*, 56 Ill. App. 3d 997, 372 N.E.2d 1131; *Dezort v. Village of Hinsdale*, 35 Ill. App. 3d 703, 372 N.E.2d 468; *Gardner v. Village of*

*Chicago Ridge*, 71 Ill. App. 2d 373, 219 N.E.2d 147; Restatement (Second) of Torts §320 (1965); Annot., 41 A.L.R. 3d 1021 (1972), the *Thiele* opinion does state the current rule. Section 2—201 afforded defendants immunity from plaintiff's suit.

■■ Defendants also assert immunity under section 4—102 and 4—103. Defendants claim immunity under section 4—102 by arguing that protecting prisoners from attacks by other inmates is essentially preventing the commission of a crime and section 4—102 grants public employees immunity for the failure to prevent a crime. Section 4—103 involves detentional facilities and the language of that section, as previously set forth, clearly indicates its applicability to the present facts. Of these two, section 4—103 is more specific and is particularly applicable to the relation of the parties. In light of this, we believe that defendants' immunity is limited to section 4—103. Hence, defendants' immunity stems from the specific immunity provided by section 4—103 and the more general immunity granted by section 2—201. The more difficult question to resolve is whether these immunities were waived by the purchase of insurance covering the acts complained of.

Section 9—103(b) of the Tort Immunity Act is at the center of this issue. (Ill. Rev. Stat. 1975, ch. 85, par. 9—103(b).) It provides:

"Every policy for insurance coverage issued to a local public entity shall provide or be endorsed to provide that the company issuing such policy waives any right to refuse payment or to deny liability thereto within the limits of said policy by reason of the non-liability of the insured public entity for the wrongful or negligent acts of itself or its employees and its immunity from suit by reason of the defenses and immunities provided in this Act."

While legislative history does not enlighten us as to the intended scope of section 9—103(b) (see *Fanio v. John W. Bresslin Co.*, 51 Ill. 2d 366, 282 N.E.2d 443), the concept embodied in section 9—103(b) is not unique to statutory law. Language comparable to that contained in section 9—103(b) can be found in Ill. Rev. Stat. 1959, ch. 122, par. 6.35.1; Ill. Rev. Stat. 1959, ch. 122, par. 29—11a; Ill. Rev. Stat. 1977, ch. 34, par. 429.7. Of these statutes only paragraph 429.7 of chapter 34 remains in effect. However, these statutes are of general interest only in light of the lack of meaningful authority interpreting them.

■■ Adopting the thesis of the recent article in the Illinois Bar Journal (J.S. Judge, *Tort Immunity Act; Only Certain Immunities Are Waived by the Public Entity's Purchase of Insurance*, 63 Ill. B.J. 386 (1975)), defendants argue that not all the immunities provided for in the Tort Immunity Act are waived by the purchase of public liability insurance, but only those which exist to protect public funds. Defendants argue that because sections 2—201 and 4—102 serve different purposes, none of the defenses

and immunities created by those sections are waived by the purchase of insurance. Merely because the several provisions of the Tort Immunity Act may rest upon different considerations (see *Mora v. State*, 68 Ill. 2d 223, 369 N.E.2d 868) does not resolve the question of waiver. The issue is not what are the differences in the genesis of the various sections of the Tort Immunity Act, but whether by virtue of section 9—103(b) the legislature intended a particular section to be waived by the public entity's purchase of insurance. While the fundamental basis and purpose behind the various provisions of the Tort Immunity Act may be different, we perceive no reason why the purchase of public liability insurance does not adequately fulfill the purpose behind sections 2—201 and 4—103. The primary concern of any individual who is called to account for his actions is the personal financial responsibility that may be imposed as a result of his acts. Shielding an individual in the employ of a local governmental entity from personal financial responsibility by the entity's purchase of insurance certainly eliminates such a fear. Furthermore, by virtue of section 2—301 of the Tort Immunity Act and the statutory provisions set forth therein, individual defendants are afforded an additional measure of protection from personal financial responsibility.

Pertinent to an inquiry of the intent of the legislature in enacting section 9—103(b) is the question of who is intended to benefit by the purchase of insurance. Certainly local governmental entities and their employees derive a benefit from the purchase of public liability insurance, but ought not those who provide the funds to purchase the insurance derive a benefit as well. It can be persuasively argued that insurance protects not only public funds, but protects the public as well by providing compensation to individual members of the public injured by the improper acts of local governments and their employees which cause harm to the individual members of the public. It is indeed unusual to the statutory scheme in Illinois to have insurance determine the question of liability, but that seems to be what the decisions in *Sullivan v. Midlothian Park District*, 51 Ill. 2d 274, 281 N.E.2d 659, and its progeny have held the net effect of section 9—103(b) to be. We are also aware that section 9—103 was recently amended. (P.A. 80-612, effective Oct. 1, 1977.) The amendment tends to encourage insurance by expanding the permissible ways that governmental entities may arrange for insurance protection. While the amendment does not alter the substantive dimensions of the former section 9—103(b), now section 9—103(c), it does demonstrate that the legislature has had an opportunity to re-examine section 9—103 in light of judicial decisions interpreting that section, but has refrained from amending the language of former section 9—103(b). Hence, it appears the legislature agrees with the judicial construction heretofore given section 9—103(b). We perceive no reason

why the legislature intended the sections at issue here to be treated differently from those provisions which have previously been held waived by the purchase of insurance.

Defendants acknowledge that a number of sections of the Tort Immunity Act have been held to have been waived by the purchase of insurance. We are aware of no decision, nor has any been cited by the parties, in which it was held that an immunity created by the Tort Immunity Act was not waived by the purchase of insurance. In *Marshall-Putnam Farm Bureau, Inc. v. Shaver*, 12 Ill. App. 3d 402, 299 N.E.2d 10, plaintiffs included a farm bureau whose building stood next to a deteriorating building. Defendants included the City of Henry and its mayor. Due to the hazards presented by the adjacent dilapidated building, the Farm Bureau on several occasions requested the mayor take action to either demolish the building or order the necessary repairs. The mayor and the city failed to act. The Farm Bureau building was damaged when the adjacent building collapsed and plaintiffs sought compensation from the mayor and the city for the negligence of the city and the mayor. The court held that "the immunity granted to the defendant City of Henry, and its defendant Mayor Warner, for negligence by reason of the provisions of the Local Governmental and Governmental Employees Tort Immunity Act will be waived within the limits of a policy of insurance shown to have been contracted for and issued in compliance of section 9—103." (12 Ill. App. 3d 402, 404-05, 299 N.E.2d 10, 12.) Arguably, the actions of the mayor could involve discretionary actions and the mayor's statutory immunity was certainly derived from the doctrine of public officials immunity. Nevertheless, the court held that the waiver provision of section 9—103(b) applicable to the immunities existing on behalf of the mayor and the city.

In *Pippin v. Chicago Housing Authority*, 58 Ill. App. 3d 1029, 374 N.E.2d 1055, the defendant Chicago Housing Authority asserted immunity by virtue of section 4—102. The plaintiffs in *Pippin* responded claiming the existence of insurance waived section 4—102 immunity. The court held that "[t]he immunities granted by the Act are only for the benefit of uninsured municipalities, and the purpose of section 9—103 is to prevent any insurer from avoiding liability by reason of immunities granted to uninsured municipalities." (58 Ill. App. 3d 1029, 1039, 374 N.E.2d 1055, 1062.) We agree with the court in *Pippin* that the immunity created by section 4—102 is waived by the purchase of insurance. There is no reason why the immunity resulting from section 4—103 should stand on a different plane. Accordingly, we hold the immunities granted by section 4—103 and section 2—201 are waived within the limits of a policy of insurance shown to have been contracted for and issued in compliance of section 9—103.

The plaintiff has argued that *Mora v. State*, 68 Ill. 2d 223, 369 N.E.2d

868, requires an opposite conclusion. The defendants in *Mora* included State employees and officials, but the Tort Immunity Act, since it pertains only to local governmental entities and their employees, was not at issue. The thrust of the opinion is that the net effect of insurance is different in its application to State employees as opposed to local governmental employees and therefore *Mora* does not dictate a different decision than the one we reach.

For the foregoing reasons the judgment of the circuit court of Rock Island County is reversed and the cause remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.

SCOTT, P. J., and ALLOY, J., concur.