VALORIE L. PORTER, Plaintiff-Appellant, *v.* THE CITY OF URBANA *et al.*, Defendants-Appellees.

Fourth District   No. 16030

Opinion filed September 15, 1980.

James A. Martinkus and Paul R. Cole, both of Champaign, for appellant.

Phebus, Tummelson, Bryan & Knox, of Urbana (Hurshal C. Tummelson and Janet A. Flaccus, of counsel), for appellees.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The plaintiff appeals from the trial court's dismissal of her four-count complaint against the city of Urbana and one of its police officers, Charles Gordon, for failure to state a cause of action. The question on review is whether a municipality or its policemen may be liable in tort for failing to prevent persons from committing crimes.

The plaintiff's complaint alleges that Clarence King, Jr., invaded her home December 3, 1976, and beat and raped her, and that the Urbana Police Department and Gordon knew of six other rapes committed by King in Urbana beginning March 22, 1976; Gordon was the officer responsible for investigating those rapes. The first and third counts allege wilful and wanton misconduct, and the second and fourth allege simple negligence. Each of the counts alleges that from March 22, 1976, until December 3, 1976, Gordon did not investigate, question, or arrest King despite having extensive information, including eyewitness descriptions of King, his fingerprints, and his name, connecting him with the series of rapes. According to the complaint, the failure to question or arrest King proximately caused the plaintiff's injuries. The complaint bases Gordon's duty on his powers to arrest and detain suspects (Ill. Rev. Stat. 1979, ch. 24, par. 3—9—4; ch. 38, par. 107—2(c)). The complaint also alleges that Urbana had insurance covering this type of liability when the cause of action arose, thus waiving the immunities provided by the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1977, ch. 85, par. 1—101 *et seq.*) (Tort Immunity Act). Urbana's liability for Gordon's conduct is based presumably upon *respondeat superior*.

In dismissing the complaint, the trial court found that the duty alleged by the plaintiff was owed to the public generally and not to specific individuals, that having the trier of fact assess the quality of police work would violate public policy, and that insurance coverage does not by itself create a cause of action under the Tort Immunity Act.

■■ As a preliminary matter, governmental immunity is not at issue here. Section 4—102 of the Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, par. 4—102) provides:

"Neither a local public entity nor a public employee is liable * * * for failure to provide adequate police protection or service,

failure to prevent the commission of crimes and failure to apprehend criminals."

A municipality waives the statutory immunity by securing insurance coverage against a particular form of liability. (Ill. Rev. Stat. 1979, ch. 85, par. 9—103(c); *Bollinger v. Schneider* (1978), 64 Ill. App. 3d 758, 381 N.E.2d 849.) The Tort Immunity Act is not a catalog of duties or a source of rights; it does not create new liabilities where none already exist. (*Hannon v. Counihan* (1977), 54 Ill. App. 3d 509, 369 N.E.2d 917.) Thus, we must look to other statutes and to the common law to determine whether the complaint states a cause of action.

■■■ The plaintiff alleges that Gordon was negligent, both simply and wilfully and wantonly, by failing to act under his statutory authority to preserve the peace and to make arrests necessary to achieving that end. (Ill. Rev. Stat. 1979, ch. 24, par. 3—9—4; ch. 38, par. 107—2(c).) Although the statutes are framed in terms of power rather than duty, they obligate a municipality and its police officers to take reasonable measures to maintain the well-being of their community. (*Huey v. Barloga* (N.D. Ill. 1967), 277 F. Supp. 864.) Yet the statutes do not expand the traditional common law duty of police departments and their officers, who generally are not liable for failing to prevent persons from committing crimes. The duty of the police to preserve a community's well-being is said to be owed to the public at large rather than to specific members of the community. (*E.g., Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 243 N.E.2d 214; *Massengill v. Yuma County* (1969), 104 Ariz. 518, 456 P.2d 376; *Motyka v. City of Amsterdam* (1965), 15 N.Y.2d 134, 256 N.Y.S.2d 595, 204 N.E.2d 635.) At first sight the formulation of the general rule seems to express no duty at all; a public rather than private duty provides little if any consolation to the aggrieved individual. Yet violations of the public duty may be punished in criminal proceedings against the offending police officer or department. The rule is sometimes justified on the somewhat murky distinction between proprietary and governmental functions; police work falls within the latter category. (*Keane v. City of Chicago* (1968), 98 Ill. App. 2d 460, 240 N.E.2d 321.) A more direct explanation rests on considerations of public policy. The rule embodies the conclusion that a police department's negligence—its oversights, blunders, omissions—is not the proximate or legal cause of harms committed by others. Proximate cause is duty's twin: each concept may be restated in terms of the other, and expressing the problem in terms of duty underscores the policy issues underlying the decision whether to find a duty. (Prosser, Torts §42 (4th ed. 1971).) The existence of a duty ultimately depends upon choices between competing policies. (Prosser, Torts §53 (4th ed. 1971).) Recognizing a duty owed generally by the police to individuals, in the absence of special circumstances, would pressure the police to make hasty arrests.

A general duty would also put the police in the position of guaranteeing the personal safety of every member of the community.

The rule does not apply, and recovery is permitted when the police have assumed a special relationship to a person that elevates his status to something more than just being a member of the general public. Thus, *Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373, 219 N.E.2d 147, *appeal after remand* (1970), 128 Ill. App. 2d 157, 262 N.E.2d 829, *cert. denied* (1971), 403 U.S. 919, 29 L. Ed. 2d 696, 91 S. Ct. 2230, found a cause of action where the plaintiff was attacked again when he accompanied police officers to identify some persons who had attacked him earlier that day. *Schuster v. City of New York* (1958), 5 N.Y.2d 75, 180 N.Y.S.2d 265, 154 N.E.2d 534, recognized a cause of action where the plaintiff's decedent had been murdered as a result of his collaboration with police in apprehending a fugitive; the decedent's part in the capture had been widely publicized, and he had received threats against his life. The court thought that denying liability would make the public less willing to assume often dangerous roles in aiding the police. Of course, when police exceed the scope of their authority, as by beating a person, the individual officers as well as the municipality are liable in tort. (*Krieger v. Village of Carpentersville* (1972), 8 Ill. App. 3d 243, 289 N.E.2d 481.) Municipalities and officers may also be liable for harms caused by escaped prisoners. Thus, in *Johnson v. Gallatin County* (7th Cir. 1969), 418 F.2d 96, the court, applying Illinois law, held that a county and one of its deputy sheriffs was liable for injuries caused when a prisoner in the deputy's custody took the deputy and a third person hostage and shot the plaintiff in a later scuffle. The court relied on the foreseeability of the harm; the deputy's negligent guarding of the prisoner had permitted him to obtain a gun. A prisoner may also have a claim against the authorities when injured by other inmates. (*Bollinger.*) Control over the prison and its occupants establishes the public body's duty toward the individual. *Hansen v. City of St. Paul* (1974), 298 Minn. 205, 214 N.W.2d 346, based the plaintiff's suit to recover for dog bites that he had received while on a sidewalk on the City's control over and responsibility for sidewalks; the police had received numerous complaints concerning the animals but had failed to act promptly. A plaintiff's request for police protection alone is insufficient to create a duty. *Riss v. City of New York* (1968), 22 N.Y.2d 579, 293 N.Y.S.2d 897, 240 N.E.2d 860.

■■ The plaintiff's allegations are insufficient to take this case out of the general rule denying liability. The alleged facts do not show the sort of special relationship necessary to establishing a duty running from the police to a particular person. The plaintiff does not allege that the police knew of circumstances entitling her to a greater degree of protection, and hence imposing a greater duty, than that afforded to the public generally,

or that the police had control over the place where the attack occurred. We therefore agree with the trial court that the complaint fails to state a cause of action against either Urbana or Gordon.

Affirmed.

MILLS, P. J., and WEBBER, J., concur.