**Tina HINTZ, Plaintiff-Appellee,**

v.

**Leslie JAMISON, as Dix Township Road Commissioner, and Township of Dix, Defendants/Third Party Plaintiffs-Appellants,**

v.

**Robert HINTZ, Third-Party Defendant-Appellee.**

**No. 83–1503.**

United States Court of Appeals, Seventh Circuit.

Argued May 22, 1984.

Decided Sept. 10, 1984.

Robert J. Banks, Jr., Sebat, Swanson, Banks, Lessen & Garman, Danville, Ill., for defendants/third party plaintiffs-appellants.

Joseph W. Phebus, Phebus, Tummelson, Bryan & Knox, Urbana, Ill., for plaintiff-appellee.

Before BAUER, and FLAUM, Circuit Judges, and WYATT, Senior District Judge.[*]

BAUER, Circuit Judge.

Plaintiff Tina Hintz brought this diversity action against Defendants Leslie Jamison, in his capacity as Dix Township Road Commissioner, and Dix Township, alleging that the defendants breached their duty to maintain safe roads and thus caused an automobile accident in which Hintz was injured. The jury found in favor of Hintz. The defendants appeal the district court's denial of their motions for a directed verdict, for judgment notwithstanding the verdict, and for a new trial. We affirm.

## I

On the morning of July 27, 1979, Tina Hintz and her husband, Robert Hintz, were traveling west on a Dix Township road in Ford County, Illinois.[1] This road terminated in a T-intersection at a north-south township road. The township had placed a double-arrow sign west of the intersection to warn west-bound traffic, but had installed no stop signs or advance warning signs. Robert Hintz, who was the driver, testified that there also was loose gravel in the intersection. Because the morning was foggy, the plaintiff and her husband did not see the warning sign until they were about twenty-five feet away from the intersection. Robert Hintz braked and tried to turn sharply south, but his car skidded into a ditch.

Although Robert Hintz sustained no injuries in the accident, Tina Hintz was not so fortunate. She sustained a back injury for which she has had surgery twice and a neurological injury that has caused bowel and bladder dysfunctions. She testified that several of her toes have curled under her feet, and that she still suffers from continual back pain, numbness in her legs, and bladder accidents.

At the time of the accident, Defendant Jamison, as Dix Township Road Commissioner, was in charge of posting and maintaining the township's road signs. In Illinois, a township is liable for the tortious acts of its road commissioner acting in his official capacity. *See Hennigs v. Centreville Township*, 56 Ill.2d 151, 306 N.E.2d 287 (1974). The plaintiff alleged that the defendants breached their duty to maintain roadways in a reasonably safe condition and to post adequate warning signs as required by the Local Governmental and Governmental Employees Tort Immunity Act, Ill.Stat.Ann. ch. 85, §§ 3–102 & –104

---

[*] Honorable Inzer B. Wyatt, Senior District Judge for the Southern District of New York, sitting by designation.

1. At the time of the accident, Tina Hintz was a resident of Illinois. She moved to Oklahoma before instituting this suit.

(Smith-Hurd 1965) (the Tort Immunity Act).[2] The defendants filed a third party complaint against Robert Hintz, alleging that his negligent driving caused the accident. The jury awarded Tina Hintz $250,000, with a twenty-five percent contribution to come from Robert Hintz. The district court denied the defendants' post-trial motions.

## II

The defendants' principal argument on appeal is that they are immune from liability under the Tort Immunity Act. Ill.Stat. Ann. ch. 85, § 1–101 (Smith-Hurd 1965). The Act confers immunity for public officials' discretionary acts, *id.* § 2–201, and provides that local governmental bodies are not liable for injury caused by an employee where the employee is not liable, *id.* § 2–109. Another section provides that nothing in the Act shall "deprive any public entity of any defense heretofore existing and not described herein." *Id.* § 2–111. Finally, Section 9–103(c), which states that any insurance policy must waive the insurance company's right to refuse payment because of the "non-liability of the insured public entity ... and its immunity from suit by reason of the defenses and immunities provided in this Act," has been interpreted by Illinois courts to provide that procuring insurance waives a public body's immunity. *See, e.g., Sullivan v. Midlothian Park District,* 51 Ill.2d 274, 281 N.E.2d 659 (1972). Dix Township has an insurance policy that conforms to Section 9–103's requirements.

The plaintiff apparently concedes that Jamison's alleged failure to post warning signs was a discretionary act protected by the public official immunity of Section 2–201. She argues, however, that Dix Township's insurance policy waived both Jamison's and the township's immunity.

Before 1959, local governmental bodies and their employees generally were protected against suit in Illinois by a doctrine of quasi-judicial immunity. In *Molitor v. Kaneland Community Unit District No. 302,* 18 Ill.2d 11, 163 N.E.2d 89 (1959), the Illinois Supreme Court abolished tort immunity for school districts. Later cases held that *Molitor* marked the end of governmental immunity in Illinois. Subsequent legislative attempts to immunize specific municipal bodies fell to constitutional challenge, *see Harvey v. Clyde Park District,* 32 Ill.2d 60, 203 N.E.2d 573 (1964), prompting passage of the comprehensive Tort Immunity Act. *See generally* Comment, *Illinois Tort Claims Act: A New Approach to Municipal Tort Immunity in Illinois,* 61 Nw.U.L.Rev. 265, 265–71 (1966).

The defendants argue that public official immunity existed before the Act was passed, and thus is a "heretofore existing" defense preserved by Section 2–111 that is not waived when a public entity procures insurance. Although Section 2–111 also states that the defense not be "described" in the Act, the defendants contend that the Illinois Supreme Court's decision in *Lansing v. County of McLean,* 69 Ill.2d 562, 14 Ill.Dec. 543, 372 N.E.2d 822 (1978), supports their argument that an immunity existing before the Act was passed is not

---

**2.** Section 3–102(a) provides:

Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in sufficient time prior to an injury to have taken measures to remedy or protect against such condition.

Section 3–104(b) provides:

Neither a local public entity nor a public employee is liable under this Act for any injury caused by the failure to provide traffic warning signals, signs, markings or other devices unless such a signal, sign, marking or device was necessary to warn of a condition which endangered the safe movement of traffic, and which would not be reasonably apparent to or anticipated by a person in the exercise of due care.

waived even when the immunity is described in the Act.

■ The defendants misapply the court's holding in *Lansing*. That case did not involve governmental immunity, but rather a defense that had been unaffected by *Molitor*. 69 Ill.2d at 571, 14 Ill.Dec. at 547, 372 N.E.2d at 826 (the city's defense "did not indeed rest on a doctrine of governmental immunity, but rather upon the absence of liability in circumstances where the [county] had taken no action contributing to the injury."). In *Lansing*, the court rejected the plaintiff's attempt to use the Section 9–103 insurance waiver to hold a city liable for injuries resulting from its failure to remove naturally-accumulating ice and snow from city streets. Since 1931, Illinois courts have held that cities have no such duty, *see Graham v. City of Chicago*, 346 Ill. 638, 178 N.E. 911 (1931), and the Act itself affirms this defense in Section 3–105. *Lansing* thus stands for the proposition that the insurance waiver provision may not impose new liability on governmental bodies for acts that previously had been held not tortious. *See also Porter v. City of Urbana*, 88 Ill.App.3d 443, 445, 43 Ill.Dec. 610, 612, 410 N.E.2d 610, 612 (1980) ("The Tort Immunity Act is not a catalog of duties or a source of rights; it does not grant new liabilities where none already exist."); *Hannon v. Counihan*, 54 Ill. App.3d 509, 512, 12 Ill.Dec. 210, 213, 369 N.E.2d 917, 919 (1977) ("The Tort Immunity Act does not create any new liabilities for negligent acts or omissions which did not previously exist.").

■ Although the Tort Immunity Act did not impose new liability where none had existed previously, it did confer immunity for local governmental units and their employees, and provide that such immunity would be waived when the governmental body procures insurance. We are not convinced by the defendants' contention that public official immunity was not affected by *Molitor* and thus is a "heretofore existing" defense that may not be waived by insurance. Rather, whether public officials still enjoyed immunity after the *Molitor*

decision was disputed by Illinois courts. *Compare, e.g., Blazer v. Highway Commissioner of Marengo Township*, 93 Ill. App.2d 89, 235 N.E.2d 13 (1968) (public officials not immune after *Molitor*) *and Kitto v. Wattleworth*, 24 Ill.App.2d 484, 164 N.E.2d 817 (1960) (same) *with Ten Eicken v. Johnson*, 1 Ill.App.3d 165, 273 N.E.2d 633 (1971) (*Molitor* did not destroy public official immunity) *and Lusietto v. Kingan*, 107 Ill.App.2d 239, 246 N.E.2d 24 (1969) (same). As discussed, the Act's purpose was to resolve such confusion regarding immunity in the wake of *Molitor*. Thus, the defendants' immunity here is both conferred by the Act and waived by the township's insurance policy. *See Bollinger v. Schneider*, 64 Ill.App.3d 758, 21 Ill.Dec. 522, 381 N.E.2d 849 (1978) (insurance policy waives prison officials' § 2–201 immunity). *See also Sullivan v. Midlothian Park District*, 51 Ill.2d 274, 281 N.E.2d 659 (1972) (insurance waives § 3–106 immunity for injuries occurring in public parks or playgrounds); *Holda v. Kane County*, 88 Ill.App.3d 522, 43 Ill.Dec. 552, 410 N.E.2d 552 (1980) (insurance waives city's § 2–102 immunity from punitive damages); *Marshall-Putnam Farm Bureau v. Shaver*, 12 Ill.App.3d 402, 299 N.E.2d 10 (1973) (insurance waives any otherwise available immunities for mayor and city from liability for failure to repair or demolish abandoned building).

### III

■ The defendants raise several other objections, all of which involve decisions that are left either to the discretion of the judge or the wisdom of the jury. We conclude that the jury's verdict was supported by the evidence, and thus the district court properly denied the defendants' motions for a directed verdict and for judgment notwithstanding the verdict. Furthermore, the district court did not abuse its discretion in admitting the testimony of the plaintiff's expert witness, a civil engineer. The expert's technical understanding of Illinois' signing requirements could help the jury understand the evidence, as permitted un-

der Federal Rule of Evidence 702. Also, the district court gave proper jury instructions regarding comparative negligence in Illinois. Finally, the jury's money award is not "so large as to shock the conscience of the court." *Huff v. White Motor Corp.*, 609 F.2d 286, 296 (7th Cir.1979) (quoting *Grunenthal v. Long Island RR*, 393 U.S. 156, 159 n. 4, 89 S.Ct. 331, 333 n. 4, 21 L.Ed.2d 309 (1968)). Rather, considering the injuries that the plaintiff received and the fact that twenty-five percent of the award will be set-off by the contribution from her husband, it is the defendants' suggestion that the award is excessive that we find rather shocking.

The judgment of the trial court is affirmed.

AFFIRMED.