**Alex STRANDELL, et al., Plaintiffs,**

**v.**

**JACKSON COUNTY, ILLINOIS, et al., Defendants.**

**No. CV85–4159.**

United States District Court,
S.D. Illinois,
Benton Division.

Sept. 3, 1986.

Richard E. Boyle, Gundlach, Lee, Eggmann, Boyle & Roessler, Belleville, Ill., Thomas F. Tobin, Gerald L. Maatman, Jr., John W. Dondanville, Baker & McKenzie, Chicago, Ill., for plaintiffs.

Richard A. Green, Feirich, Schoen, Mager, Green & Assoc., Carbondale, Ill., for defendants.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

This matter is before the Court on defendants' Motion to Dismiss in Part and for Partial Summary Judgment. On April 17, 1986 this Court granted in part and denied in part defendants' motion to dismiss plaintiffs' initial complaint. Prior to the Court's ruling on April 17, plaintiffs filed their first amended complaint, which defendants now move to dismiss. The Court then issued an Order, which stated that its rulings on the initial complaint were applicable to the amended complaint, and which also allowed defendants to file another motion "as to any part of the amended complaint that raises new issues." The primary purpose of entering that Order was to inform defendants that they could not object, in a later motion to dismiss, to any matters already ruled on by this Court.

■■■ Plaintiffs argue that defendants have waived the defenses they now raise since those defenses were available, but were not asserted, in defendants' first motion to dismiss. The Court first notes that defendants raised the defense of failure to state a claim in their original motion to dismiss, although the particular *issues* they now raise, with respect to that defense, were not asserted in their original motion. In any event, the defenses raised in defendants' pending motion are asserted pursuant to Rule 12(b)(6), and are not waiveable. *See* Fed.R.Civ.P. 12(h)(1) & (2). Although the proper procedure for raising the defenses now at issue is in a motion for judgment on the pleadings, "since the objection [of failure to state a claim] is so basic and is not waived, the Court might properly entertain the second motion [to

dismiss] if convinced that it is not interposed for delay and that the disposition of the case on the merits can be expedited by so doing." 2A Moore's Federal Practice ¶ 12.22 at 12–192. In the instant case, the Court finds that defendants' motion is not interposed for delay and that disposition of the case will be expedited by reaching the merits of defendants' motion. The specific issues, therefore, are addressed below.

This case involves the death of Michael Strandell, who committed suicide while confined at the Jackson County Jail on March 17, 1984. The facts of the case are fully set forth in this Court's prior opinion and will not be repeated here. *See Strandell v. Jackson County, Illinois*, 634 F.Supp. 824 (S.D.Ill.1986).

## I. *Liability Of Jackson County*

■■■ Defendants request this Court to reconsider its earlier ruling that plaintiffs have stated a claim for relief against Jackson County under 42 U.S.C. § 1983. Municipal liability may only be imposed for unconstitutional actions that are inflicted pursuant to a governmental "policy or custom." *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Defendants argue that Jackson County's liability is premised upon allegations of inadequate staffing, overcrowding, inadequate training, and failure to adopt procedures for the screening and treatment of intoxicated and suicidal pretrial detainees. Such allegations, defendants contend, constitute "negative" policies, and as such, are insufficient to support a *Monell* claim of governmental liability. Defendants cite *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) in support of their argument. Defendants also note that the United States Supreme Court has granted a writ of certiorari to determine whether "negative" policies state a claim against a municipality under section 1983. *See City of Springfield v. Kibbe, cert. granted,* —— U.S. ——, 106 S.Ct. 1374, 89 L.Ed.2d 600 (1986).

In the plurality opinion in *Tuttle*, the Supreme Court stated:

> [T]he word "policy" generally implies a course of action consciously chosen from among various alternatives; it is therefore difficult in one sense even to accept the submission that someone pursues a "policy" of "inadequate training," unless evidence be adduced which proves that the inadequacies resulted from conscious choice—that is, proof that the policymakers deliberately chose a training program which would prove inadequate.

*Tuttle*, 105 S.Ct. at 2436. In a more recent decision, the Supreme Court also suggested that the word policy implies "a deliberate choice to follow a course of action...." *Pembauer v. City of Cinncinnati*, — U.S. ——, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986).

■ In the present case, however, plaintiffs allege, for example, that defendants "have refused to alter the in-take and processing system for intoxicated pre-trial detainees," and "have refused to establish a detoxification unit ... in which to treat and house intoxicated pre-trial detainees" despite recommendations by architects and jail consultants that such arrangements be established, and despite the history of similar suicides and suicide attempts at the jail. (Plaintiffs' Complaint, ¶¶ 41–49). Plaintiffs, in effect, allege that defendants were aware of the need to improve the operation of the jail, but nevertheless *deliberately chose* to operate the jail in a manner that endangered the health and safety of pretrial detainees. Plaintiffs have, therefore, adequately alleged a "policy" as defined by the Supreme Court in *Tuttle* and *Pembauer*, and their allegations are thus sufficient to withstand defendants' motion to dismiss. *See also Anderson v. City of Atlanta*, 778 F.2d 678, 686 (11th Cir.1985) (conscious decision by city officials not to increase jail staff, when officials knew that failure to do so would impair the delivery of proper medical care to detainees, constituted a "policy" for purposes of establishing municipal liability).

■ Additionally, as noted by plaintiffs, "local governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91, 98 S.Ct. at 2036. Thus, "[a] § 1983 plaintiff ... may be able to recover from a municipality *without adducing evidence of an affirmative decision by policymakers* if able to prove that the challenged action was pursuant to a state '*custom or usage.*'" *Pembauer*, 106 S.Ct. at 1299 n. 10 (emphasis added). *See also Anela v. City of Wildwood*, 790 F.2d 1063, 1069 (3d Cir.1986) (longstanding practice of maintaining inadequate jail facilities constituted a city custom or usage). Plaintiffs allege that Jackson County's policies *and* customs subjected the decedent to a deprivation of his constitutional rights. Under *Monell* and *Pembauer*, such allegations are sufficient to state a claim against the County.

The Court further notes that in several post-*Tuttle* decisions also involving jail house conditions, deaths and suicides, other courts have sustained claims against municipalities based on allegations very similar to those in the present case. *See, e.g., Partridge v. Two Unknown Police Officers of the City of Houston*, 791 F.2d 1182 (5th Cir.1986); *Anela v. City of Wildwood*, 790 F.2d 1063 (3d Cir.1986); *Anderson v. City of Atlanta*, 778 F.2d 678 (11th Cir. 1985); *Garcia v. Salt Lake County*, 768 F.2d 303 (10th Cir.1985). Therefore, for the reasons stated above, defendants' motion for reconsideration as to Jackson County's liability is denied.

## II. *Liberty Interest*

■ Defendants also request this Court to reconsider its earlier ruling that the mandatory language of the Illinois County Jail Standards creates a protected liberty interest in an expectation of certain minimal standards and treatment. In support of its request, defendants contend that 1) the Jackson County Jail was not required to be in compliance with the standards re-

lating to the *physical* nature of the jail until January 1, 1986; 2) Illinois case law holds that the jail standards create no duty on the part of the jailors to comply with those standards; and 3) since plaintiffs cannot, under state law, seek injunctive relief to enforce compliance with the Illinois County Jail Standards, they cannot establish any "claim of entitlement" under state law.

■ The Illinois County Jail Standards provide, in section 8–8:

Compliance: All requirements of a physical nature shall be complied with by the following dates: (A) Jails built in 1950 or before shall be in compliance by January 1, 1986.

Plaintiffs allege in their complaint that the Jackson County Jail was built in 1926, but have failed to address defendants' argument that the jail standards regulating the physical condition of the jail were inapplicable at the time Michael Strandell died. Since defendants were given until January, 1986 to comply with the standards regarding *physical conditions,* and since Michael Strandell's death occurred on March 17, 1984, the Court agrees with defendants that no liberty interest may be premised on those standards. As noted in *Shango v. Jurich,* 681 F.2d 1091 (7th Cir.1982), no liberty interest is created where prison officials are given discretion under state law to act or not act. *Id.* at 1100. "The existence of such discretion 'preclude[s] the implication of a liberty interest deserving of due process protection.' " *Id.* (citations omitted).

■ Defendants contend that even those standards not governing physical requirements fail to give rise to a liberty interest. (The Court previously held that the jail standards created a liberty interest in an expectation of treatment that protects the safety, health and well-being of pretrial detainees. *See Strandell,* 634 F.Supp. at 828–29). The Court disagrees with defendants' assertion. *Dezort v. Village of Hinsdale,* 35 Ill.App.3d 703, 342 N.E.2d 468 (1976), a case cited by defendants in support of their claim that the jail standards

create no entitlement to have those standards followed, was concerned with the legal duty owed by jailors in a negligence case. *Dezort* is simply irrelevant to the question of whether a protectable liberty interest has been established.

■ Likewise, the Court disagrees with defendants' contention that because an individual inmate cannot, under state law, demand compliance with the jail standards, there is no "claim of entitlement" to have those standards followed. (Under Illinois law, the State Department of Corrections is given the right to enforce compliance with the jail standards.) Defendants cite no authority for their proposition that "[i]n order to assert a claim of entitlement to compliance with the Jail Standards, it is necessary to analyze whether Illinois law recognizes an individual inmate's right to demand compliance with those standards." (Defendants' Reply Memorandum, p. 11). As noted by plaintiffs, the determination of whether a liberty interest exists is not dependent upon the "intricacies of state law enforcement mechanisms." (Plaintiffs' Sur-Reply, p. 11).

Therefore, defendants' motion for reconsideration is granted only insofar as the Court holds that Michael Strandell had no liberty interest in an expectation of certain minimal standards for the *physical condition* of the jail.

### III. *Probable Cause Determination*

■ In their complaint, plaintiffs allege that defendants arrested plaintiff without a warrant and without probable cause. Plaintiffs further allege that defendants' failure to bring Michael Strandell before a magistrate for a probable cause hearing violated his fourth and fourteenth amendment rights. The complaint states that Strandell was brought to the courthouse at approximately 5:30 a.m., that he was subsequently arrested, and that he died sometime after noon on the same day. Since the exact time of Strandell's arrest is not clear, it is also not clear exactly how long he was detained following the arrest. None-

theless, defendants appear to agree that the detention was at least for a "few hours."

In *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Court held that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Id.* at 114, 95 S.Ct. at 863. Defendants contend, however, that since Strandell was detained for only a "few hours," the failure to provide a probable cause hearing does not rise to the level of a constitutional violation. Defendants cite *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194 (7th Cir.1985) in support of their argument. In *Rodgers*, the court held that a 10½ hour detention following arrest did not violate the Constitution. *Id.* at 198–99. The arrest in *Rodgers*, however, was based on probable cause and the alleged constitutional violation was a *procedural due process* violation. The Court specifically noted that had plaintiff initially been arrested without probable cause, the substantive constitutional right to be free from unreasonable searches and seizures would have been implicated. *Id.* at 198. The Court emphasized that because the case involved a procedural due process violation and because the 10½ hour detention was caused only be defendants' random, *negligent* actions, the availability of adequate state tort remedies satisfied constitutional requirements of due process. *Id.* at 198–99.

In the present case, plaintiffs allege that Michael Strandell was arrested without probable cause. Furthermore, there is no indication, at this stage, that failure to bring Strandell before a Magistrate for a probable cause hearing resulted solely from defendants' negligence. The Seventh Circuit's decision in *Rodgers* is thus easily distinguishable from the facts of the present case.

A case more analogous to the instant case is *Moore v. Marketplace*, 754 F.2d 1336 (7th Cir.1985). In *Moore*, plaintiffs were subjected to warrantless arrests on minor misdemeanor charges and were then detained in jail for four hours without being afforded a probable cause hearing. The court held that plaintiffs had sufficiently alleged violations of the fourth and fourteenth amendments. *Id.* at 1350–51. In so holding, the court stated that "detention must be justified, especially where, as in this case, there has been no independent appraisal of probable cause to arrest prior to the detention; if detention is not justified, it amounts to punishment prior to conviction." *Id.* at 1350. The court further noted that the reasonableness of the period of detention should be determined by the jury. "If no reasonable excuse [for the detention] is presented, or that excuse is legitimately disputed, the question of liability is to be decided by the jury." *Id.* at 1351–52. *See also Gramenos v. Jewel Companies*, 797 F.2d 432 (7th Cir.1986). Under *Moore*, the Court finds that plaintiffs have sufficiently pled facts to support their claim that Michael Strandell's fourth and fourteenth amendment rights were violated when defendants detained him without providing a probable cause hearing.[1]

Defendants contend that even if the Court finds that plaintiffs have sufficiently alleged violations of the fourth and fourteenth amendments, plaintiffs' claims based upon unlawful detention do not survive Michael Strandell's death.

*Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978), holds that courts must look to state law in determining whether section 1983 claims survive. *Id.* at 588–90, 98 S.Ct. at 1994–95. The Court in *Robertson* also held that application of the state survivorship statute must not have an "independent adverse effect on the policies underlying § 1983." *Id.* at 594, 98 S.Ct. at 1997. According to the Court,

---

1. Defendants attempt to distinguish *Moore* by arguing that the Court in *Moore* emphasized the fact that plaintiffs were not given an opportunity to post bail. (Strandell was apparently eligible for bail.) The Court does not agree that the lack of opportunity to post bail was a determining factor in the *Moore* decision.

"[t]he policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." *Id.* at 591, 98 S.Ct. at 1995.

Defendants argue that under *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), all section 1983 claims should be characterized as actions for personal injuries. Defendants reason that under Illinois law, personal injury actions survive only if there are physical injuries, and that because plaintiffs' claim premised upon denial of a probable cause hearing involves no physical injury, the claim cannot survive. *Wilson,* however, was concerned solely with the question of how section 1983 claims should be characterized *for purposes of determining the appropriate statute of limitations.* This Court is not willing to extend *Wilson's* holding to the question of whether section 1983 claims survive.

The Illinois Survival Statute provides, in pertinent part, as follows:

> In addition to the actions which survive by the common law, the following also survive: .... actions to recover damages for an injury to the person (except slander and libel),.... *actions against officers for misfeasance, malfeasance, or nonfeasance of themselves or their deputies....*

Ill.Rev.Stat. ch. 110½, § 27–6 (emphasis added). In *Beard v. Robinson,* 563 F.2d 331 (7th Cir.1977), plaintiff filed suit as administratix of the estate of decedent, who allegedly was killed by police officers. The complaint alleged violations of the *fourth,* fifth, eighth, ninth and *fourteenth* amendments. The district court, in interpreting the Illinois Survival Statute, held that the claims survived "only insofar as they sought damages for the physical injuries [the decedent] suffered." *Id.* at 332. The Seventh Circuit reversed and held that the claims survived as claims "against officers for misfeasance, malfeasance or nonfeasance of themselves or their deputies." *Id.* at 333–34. Similarly, in another case

involving a shooting by police officers, the court held that the decedent's 1983 claims survived under the same provision of the Illinois Survival Statute, even though the decedent died from causes unrelated to the shooting. *See Larson v. Wind,* 542 F.Supp. 25, 26 (N.D.Ill.1982). Under *Beard,* this Court concludes that plaintiffs' claims based upon unlawful detention also survive as claims against officers for misfeasance, malfeasance or nonfeasance. Defendants' motion to dismiss these claims is therefore denied.

IV. *Search of Michael Strandell's Residence*

■ Plaintiffs allege that Strandell's constitutional rights were violated by a search of his residence *after* his death. Defendants allege that this claim should be dismissed since Strandell retained no constitutional rights after his death. The Court agrees.

Although plaintiffs contend that under *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir.1984), the *estate* is a "person" and is entitled to contest the illegal search, *Bell* did not in fact resolve the question of whether an estate might be a person under section 1983. Rather, *Bell* was concerned with the claims of survivors, not claims of the estate. *Id.* at 1264. Even assuming *arguendo* that the estate is a "person," plaintiffs do not allege that the rights of the estate were violated, but only that the search "subjected the decedent to a deprivation of his constitutional rights." (Plaintiffs' Complaint, ¶ 103).

Additionally, "[f]ourth amendment rights are personal rights...." *Brown v. United States,* 411 U.S. 223, 230, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208 (1973), and are violated only when one has a "legitimate expectation of privacy" in the premises that are searched. *United States v. Payner,* 447 U.S. 727, 731, 100 S.Ct. 2439, 2444, 65 L.Ed.2d 468 (1980). Although plaintiffs contend that Strandell's parents had proprietary rights to his residence, no such allegations are set forth in the complaint.

Plaintiffs contend that the illegal search is "part and parcel of the alleged '*Monell*' policy of Jackson County to allow, acquiesce in, and fail to stop widespread violations of Fourth Amendment rights." (Plaintiffs' Sur-Reply, p. 17). While the complaint alleges that Jackson County has a policy of subjecting detainees to illegal strip searches, there are no factual allegations to support a claim that illegal searches of premises are part of any established "policy or custom." The complaint sets forth only one instance where premises were allegedly illegally searched. Plaintiffs' illegal search claim is therefore not actionable even under a *Monell* "policy theory." Accordingly, plaintiffs' claim that Strandell's residence was illegally searched is hereby dismissed.

## V. *Punitive Damages*

Defendants seek to dismiss all claims for punitive damages that are brought against defendants in their official capacities. In *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985), the court held that "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." *Id.* 105 S.Ct. at 878. And in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), the court held that punitive damages may not be recovered from a municipality in a section 1983 action. Defendants argue that since the suit against defendants in their official capacities actually asserts a claim against the county, plaintiffs likewise may not recover punitive damages from the defendants in their official capacities.

Plaintiffs cite *Kolar v. County of Sangamon*, 756 F.2d 564 (7th Cir.1985) in opposition. In *Kolar*, plaintiff obtained a judgment, in a section 1983 action, against the Sheriff of Sangamon County, and pursuant to an Illinois statute, sought to recover the judgment from the County. The Illinois statute in question provides, in relevant part, as follows:

> A local public entity is empowered and directed to pay any tort judgment or settlement for which it or an employee while acting in the scope of his employment is liable in the manner provided in this Article.

Ill.Rev.Stat. ch. 85, § 9–102. After stating the general rule that municipalities are immune from punitive damages in section 1983 actions, the *Kolar* court also noted that "a local government entity's 'immunity from ... punitive damages may be waived by federal or state law.'" *Id.* at 567. The court then held that the Illinois statute quoted above waived the County's immunity from section 1983 punitive damage awards.

*Kolar*, however, appears to hold that the County waived its immunity from punitive damages only by virtue of an "indemnity" provision in section 9–102. Thus, the holding in *Kolar* would be limited to the situation where a county would be required, by virtue of section 9–102, to pay a judgment that had already been entered against an employee while acting within the scope of his employment. This interpretation of *Kolar* is supported by the following excerpt, in which the Court compares the Illinois statute in question to a Wisconsin indemnity statute:

> As a general rule, local public entities are immune from punitive damage awards in civil rights actions. It is clear, however, that a local government entity's "immunity from liability, including liability for punitive damages, may be waived by federal or state law." *This Court held in Bell that indemnity afforded government employees under Wisconsin law waived the City of Milwaukee's immunity with regard to suits by City employees seeking indemnification for punitive damage awards obtained against them under 42 U.S.C. § 1985. Section 9–102 similarly waives the defendant County's immunity from Section 1983 punitive damage awards.* The failure of Section 9–102 expressly to authorize recovery of a punitive damage award from a local public entity in Illinois does not bar such a remedy. In *Bell* we ruled that the Wisconsin indemnity statute, which applied generally to all

"judgments," authorized indemnity suits for punitive damage awards against a local public entity. Section 9–102 also fails to distinguish between compensatory and punitive damages, and where, as in *Bell* and here, the local entity fails to argue that the statute should be read so narrowly, local entity immunity is waived as to both types of damages.

*Id.* (emphasis added) (citations omitted). Since the holding in *Kolar* appears to be limited to the factual situation described above, this Court concludes that under the Supreme Court's decisions in *Brandon* and *Newport*, all claims for punitive damages against defendants in their official capacities must be dismissed. *See also McCrimmon v. Kane County*, 606 F.Supp. 216, 225 (N.D.Ill.1985) (punitive damage claims against Sheriff and state's attorney in their official capacities dismissed since such claims were actually claims against the County).

## VI. *Survival of State Law Claims*

■ Defendants contend that plaintiffs' state law claims for false arrest, false imprisonment, invasion of privacy, intentional infliction of emotional distress and negligent infliction of emotional distress do not survive under the Illinois Survival Act. The Court agrees.

The Survival Act provides, "In addition to the actions which survive by the common law, the following also survive ... actions to recover damages for an injury to the person (except slander and libel).... Ill. Rev.Stat. ch. 110½, § 27–6. "Illinois courts have consistently held that '[this provision] mean[s] damages of a physical character.'" *Jarvis v. Stone*, 517 F.Supp. 1173, 1176 (N.D.Ill.1981). Additionally, the courts have specifically held that certain non-physical torts do not survive. *See Jarvis*, 517 F.Supp. at 1176 (intentional infliction of emotional distress); *Maritote v. Desilu Productions, Inc.*, 230 F.Supp. 721, 725 (N.D.Ill.1964), *aff'd*, 345 F.2d 418 (7th Cir.1965) (right to privacy); *Pinkerton v. Gilbert*, 22 Ill.App. 568 (1st Dist.1897) (false imprisonment).

*Beard v. Robinson*, 563 F.2d 331 (7th Cir.1977), cited by plaintiffs, is inapplicable

since it did not address the issue of survival of *state law* claims. Furthermore, the state law claims at issue here are *specific tort claims* and do not survive as claims for the malfeasance, misfeasance or nonfeasance of officers. Therefore, plaintiffs' claims in Count IV for false arrest, false imprisonment, invasion of privacy, intentional infliction of emotional distress and negligent infliction of emotional distress are dismissed.

## VII. *Proper Parties*

■ Defendants move to dismiss Marge and Alex Strandell in their individual and parental capacities in Count I (section 1983), Count III (wrongful death) and Count IV (survival statute). The proper party plaintiff in a section 1983 case is determined by reference to state law. *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir.1981). Illinois law provides that the proper party plaintiff in wrongful death and survival actions is the personal representative of the decedent's estate. *See, e.g., Rodgers v. Consolidated R.R. Corp.*, 136 Ill.App.3d 191, 90 Ill.Dec. 797, 482 N.E.2d 1080 (1985); *McGill v. Lazzaro*, 92 Ill.App.3d 393, 48 Ill.Dec. 134, 416 N.E.2d 29 (1980). Therefore, the Court grants defendants' motion to dismiss Alex and Marge Strandell *in their individual and parental capacities* in Counts I, III and IV.

## VIII. *Family Expense Act*

Defendants move to dismiss Count V, in which plaintiffs seek recovery of funeral expenses for the decedent. Defendants contend that 1) under the Family Expense Act, Ill.Rev.Stat. ch. 40, § 1015, parents are not liable for the funeral expenses of an adult child; and 2) in the absence of such liability, parents have no claim for the recovery of expenses.

■ In *Ragan v. Protko*, 66 Ill.App.3d 257, 22 Ill.Dec. 937, 383 N.E.2d 745 (1978), the court, in construing the Family Expense Act, held that "in order for a parent to recover for his child's medical and funeral expenses, he must be legally liable for the charges...." *Id.* 22 Ill.Dec. at 940,

383 N.E.2d at 748. This holding has been cited with approval in recent Illinois cases. *See, e.g., Tully v. Cuddy,* 139 Ill.App. 697, 94 Ill.Dec. 218, 219–20, 487 N.E.2d 1095, 1096–97 (1985); *Rodgers v. Consolidated R.R. Corp.,* 136 Ill.App.3d 191, 90 Ill.Dec. 797, 801, 482 N.E.2d 1080, 1084 (1985). Since Michael Strandell was twenty-two years old at the time of his death (Plaintiff's Complaint, ¶ 10), his parents were not legally responsible for his funeral expenses, and they may not recover those expenses under the Family Expense Act.

As plaintiffs note, however, Count V includes a claim by the estate of decedent. Illinois cases have recognized that an estate is legally obligated to pay the decedent's funeral expenses, *Maras v. Bertholdt,* 126 Ill.App.3d 876, 81 Ill.Dec. 728, 734, 467 N.E.2d 599, 604 (1984), and have further held that administrators of the estate may recover those expenses from the tortfeasor. *See, e.g., Chidester v. Cagwin,* 76 Ill.App.2d 477, 222 N.E.2d 274, 277–78 (1966); *Eggimann v. Wise,* 56 Ill.App.2d 385, 206 N.E.2d 472, 476 (1964). Therefore, although Alex and Marge Strandell as parents cannot recover any funeral expenses, Alex Strandell as administrator can maintain an action to recover any expenses *incurred by the estate.*

### IX. Tort Immunity Act, Section 2–201

Defendants contend that the state law claims against Kilquist and Truitt are premised solely on their roles as policymakers, and that under Ill.Rev.Stat. ch. 85, § 2–201, these defendants are immune from state-law tort liability. Section 2–201 provides that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." In a recent Illinois case, however, the court held that such immunity does not extend to a public employee's willful and wanton acts. *Barth by Barth v. Bd of Educ.,* 141 Ill.App.3d 266, 95 Ill.Dec. 604, 608–09, 490 N.E.2d 77, 81–82 (1986). In Counts III and IV of the present case, plaintiffs allege willful and wanton acts by

defendants. At this stage, therefore, the Court cannot find that defendants Kilquist and Truitt are immune from liability under the Tort Immunity Act.

### X. Tort Immunity Act, Section 4–103

Defendants also claim immunity under Ill.Rev.Stat. ch. 85, § 4–103. That statute provides immunity for a public employee's "failure to provide sufficient equipment, personnel or facilities" in a jail. Defendants admit, however, that they are covered by a policy of insurance in the amount of $500,000. The law is clear that "[t]ort immunity under the Act may be waived by a local public entity to the extent insurance is procured...." *Melbourne v. City of Chicago,* 76 Ill.App.3d 595, 31 Ill. Dec. 914, 924, 394 N.E.2d 1291, 1301 (1979). *See also Hintz v. Jamison,* 743 F.2d 535, 537 (7th Cir.1984); *Bollinger v. Schneider,* 64 Ill.App.3d 758, 21 Ill.Dec. 522, 381 N.E.2d 849 (1978).

Defendants recognize that immunity is waived to the extent of insurance coverage, but have requested the Court to enter partial summary judgment on all state law claims in excess of $500,000. Rule 56, however, "does not authorize the entry of judgment *on part of a claim* or the granting of partial relief." Wright, Miller & Kane, Federal Practice and Procedure, § 2737 at 457 (emphasis added). *See also Commonwealth Ins. Co. v. O. Henry Tent & Awning Co.,* 266 F.2d 200 (7th Cir.1959); *Oberweis Dairy, Inc. v. Associated Milk Producers, Inc.,* 553 F.Supp. 962 (N.D.Ill.1982); *Metal Coating Corp. v. Baker Manufacturing Co.,* 227 F.Supp. 529 (W.D.Wis.1964). Defendants' motion for partial summary judgment is therefore denied.

### Conclusion

For the foregoing reasons, the Court hereby enters the following Order:

1. Defendants' motion for reconsideration is GRANTED only insofar as the Court holds that Michael Strandell had no liberty interest in an expectation of certain minimal standards for the physical condition of the jail;

2. Defendants' motion to dismiss plaintiffs' claim that Michael Strandell's residence was illegally searched is GRANTED;

3. Defendants' motion to dismiss all claims for punitive damages against defendants in their official capacities is GRANTED;

4. Defendants' motion to dismiss plaintiffs' claims in Count IV for false arrest, false imprisonment, invasion of privacy, intentional infliction of emotional distress and negligent infliction of emotional distress is GRANTED;

5. Defendants' motion to dismiss Alex and Marge Strandell in their individual and parental capacities in Counts I, III and IV is GRANTED;

6. Defendants' motion to dismiss the claim of Alex and Marge Strandell (as individuals and parents) for recovery of funeral expenses is GRANTED.

The remainder of defendants' motion to dismiss is DENIED.

IT IS SO ORDERED.